SAN PEDRO, L. A. & S. L. R. CO. v. BROWN.

(Circuit Court of Appeals, Ninth Circuit. May 19, 1919.)

No. 3172.

1. MASTER AND SERVANT ⬤═289(35)—INJURY—DUTY OF CAR INSPECTOR.
   Considering evidence of practice followed by inspectors, *held*, it could not be said, as matter of law, that it was incumbent on an inspector, working under a train and injured by the moving thereof, to make sure that his fellow inspector actually placed thereon the signal to indicate that it was being inspected.

2. MASTER AND SERVANT ⬤═243(3)—INJURY—CONTRIBUTORY NEGLIGENCE—RULES AND CUSTOM.
   While it is the duty of an employé to observe rules promulgated by the employer, yet, there being evidence of a custom with respect to the interpretation of a rule which does not clearly cover the particular situation which confronts the employé, the employé is not always negligent in following the custom.

3. NEGLIGENCE ⬤═101—EMPLOYERS' LIABILITY ACT—COMPARATIVE NEGLIGENCE.
   By express provision of federal Employers' Liability Act (Comp. St. §§ 8657–8665), contributory negligence of employé of interstate carrier merely mitigates damages, and does not bar recovery.

4. MASTER AND SERVANT ⬤═180(4)—EMPLOYERS' LIABILITY ACT—NEGLIGENCE OF FELLOW SERVANT.
   Federal Employers' Liability Act (Comp. St. §§ 8657–8665), making interstate carrier liable for injury to employé resulting from negligence of an officer, agent, or employé, renders it liable for negligence of fellow servant in prosecution of its business.

5. MASTER AND SERVANT ⬤═180(5)—EMPLOYERS' LIABILITY ACT—NEGLIGENCE OF FELLOW SERVANT.
   Though under rules of interstate carrier it is the duty of inspectors to put signal on train to indicate it is being inspected, one of two inspectors working together, by relying on the other to place such signal, does not make him his agent, with the result of absolving the carrier from liability under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for his injury through negligent failure of the other to place the signal, but such negligence is attributable to the carrier; section 5 of the act declaring void, pro tanto, any contract or rule the purpose or intent of which is to enable the carrier to exempt itself from liability under the act.

6. MASTER AND SERVANT ⬤═204(3)—EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.
   A car inspector of an interstate carrier, who trusts to another inspector working with him to put on a train a signal indicating that it is being inspected, and goes on with his work unaware of the other's failure to do so, does not, under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), assume the risk of such negligence of the other.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Action by Robert L. Brown against the San Pedro, Los Angeles & Salt Lake Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The San Pedro, Los Angeles & Salt Lake Railroad Company brought writ of error to review a judgment of the District Court in favor of Brown, defendant in error, upon a verdict for damages for personal injuries. The railroad company denied negligence and pleaded contributory negligence. The action was brought under the federal Employers' Liability Act April 22, 1908 (35 Stat. 65, c. 149 [Comp. St. §§ 8657–8665]), which provides, in substance, that every common carrier by railroad, while engaged in interstate commerce, is liable in damages to any person suffering injury while he is employed by such carrier in such commerce, whether such injury results in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, and the fact that an employé may have been guilty of contributory negligence merely mitigates the damages and does not bar a recovery.

The evidence as produced by plaintiff below was as follows: Brown was an experienced car inspector employed by the railroad company at Otis, now Yermo, Cal. The inspectors worked in pairs; Brown's "partner" being one Ables, also an experienced inspector. On November 17, 1914, in daylight, they were about to inspect a train of 15 or more cars which was standing upon a main track west of the depot. The inspectors went toward the head of the engine, and separated near the head of the engine, Ables going on the south or engineer's side, and Brown on the north or fireman's side, of the engine. Ables had the blue flag in his hand. When the men separated, they were about 50 feet from the front of the engine, and Ables said, "I will put the flag there, and we will hold them there until we are through." Brown testified that it was not customary to put the flag right in the cab of the engine, but to place it on the running board, where the engineer could see it; that when he went around the engine on the north side he could not see the engineer or the fireman; that he passed two cars, and observed that on the third car, a "Salt Lake box car," the air was set, but the piston travel was too short; that he went to the west end of the car to adjust the brake, and crawled under the west end of the car behind the rear trucks, was facing forward, on the fireman's side, and pulled the release rod to release the brakes. The lever had a track spike in it, instead of a key bolt, and moved with difficulty, so he took his hammer from his pocket to strike, and was in the act of crawling up closer when he noticed the wheels starting. He made a "lunge," seized a grab-iron under the rear of the car, and managed to get out by the time the train came to a stop, but was injured. Brown said that he relied upon his partner to put the blue flag on the engine; that the custom was for one inspector to go on one side and one on the other, although they were supposed generally to go together.

There was evidence as to the custom of the railroad company with respect to inspection of air and of cars, and that when a train was brought into the yard the car inspectors place a blue flag on the end, and one inspector would go down each side of the train and inspect for brake shoes and brake "riggins." There was no evidence of a practice of putting a flag signal at each end of the train.

The testimony of Brown and Ables varies in some respects, particularly as to the conversation they had just before they separated; but Ables admitted that he was going toward the engine and had the flag in his hand. There was evidence that it was neither customary nor necessary that each inspector should personally see the flag on the engine before going beneath the car.

Certain rules of the company were introduced in evidence. One, No. 517, under the heading "Car Inspectors," reads: "When making repairs under cars standing on main track or side track, they must protect themselves by placing a blue signal on the drawhead or the platform or step of the car at each end of the train to prevent the cars from being coupled to or moved while they are making repairs." Rule 26, under which Brown said they were working, provides: "A blue flag by day and a blue light by night displayed at one or both ends of an engine, car, or train, indicates that workmen are under or about it. When thus protected, it must not be coupled to or moved. Workmen will display the signal, and the same workmen alone are authorized to move them. Other cars must not be placed on the same tracks, so as to intercept the signal, without first notifying the workmen." Another rule, No. 842, pro-

vides, in substance, that if the brakes on the last car are properly set, inspectors or trainmen will signal to release the brakes, and the inspector will examine each car and see that the brake releases, and if any brakes will not release, or have leaks or broken rods, they must be cut out by closing the stop cock in branch pipe.

Fred E. Petit, Jr., A. S. Halsted, E. E. Bennett, and Dana T. Smith, all of Los Angeles, Cal., for plaintiff in error.

T. W. Duckworth, of San Bernardino, Cal., and J. H. Ryckman, of Los Angeles, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Judge (after stating the facts as above). **[1-3]** It is evident that the inspection was being made for defective brake equipment rather than an air test, and, considering the evidence of the practice followed by the inspectors at Yermo, we cannot say that, as a matter of law, it was incumbent upon the inspector who was working under the train to make sure that the other inspector actually placed the signal.

Certainly it is the right of an employer carrier to issue rules for the safety, guidance, and protection of its employés, and it is the duty of the employés to observe such rules. But, if there is evidence of a custom with respect to the interpretation of a rule which does not clearly cover the particular situation which confronts the employé, the employé is not always negligent in following the custom, and if in the observance of the usual practice he is injured through the negligence of his fellow employé, under the statute cited he may have a cause of action for injuries received. But, if we assume that Brown was negligent in not personally seeing that the flag was placed, surely his negligence was not the sole cause of the accident, for notwithstanding Brown's negligence, if Ables, his fellow inspector, had not negligently failed to place the flag, the accident would not have happened.

**[4, 5]** It is urged that no duty rested upon the railroad company to place a blue flag on any part of the train under which Brown was working, but that the duty to place such a flag was enjoined upon Brown, the inspector, that he could not delegate or confide the performance of such duty to Ables, and that, if failure to place the flag was the proximate cause of the injury, Brown could not recover.

In this connection we have carefully considered the argument of plaintiff in error that it could not have been the intent of Congress, as expressed in the act, to permit of recovery where an injury to an employé has resulted in any way from the negligence of a fellow servant. That may be so, and Reeve v. Northern Pacific Railway, 82 Wash. 268, 144 Pac. 63, L. R. A. 1915C, 37, sustains the argument. But that argument does not answer the question in the present case. The injury sued upon in the Reeve Case was received by the employé, who was a laborer about cars, by being pushed out of the car by another employé, who was scuffling with a third fellow employé, and brushed against the man who was thrown out. It was held that the injury was not caused by the negligence of a fellow employé, committed while he was prosecuting the business of the employer. Here, however, Brown

was giving his undivided attention to his duty, the adjustment of a brake on a car, in order to put the brake in proper condition for the journey about to begin, and Ables had the flag and was also engaged in the business of the employer.

It is not open to argument that under the act cited the old defense of the fellow servant rule is gone, and we find no reasonable ground upon which to rest a conclusion that an interstate railroad employer can, by a rule made for the safety of the employés, destroy a cause of action in favor of an employé for injury received while performing a duty and directly caused by the negligence of a fellow employé.

The express declaration of the statute (section 5) that "any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability" created by the act, shall, to that extent, be void, gives aid in the proper interpretation of the act and is inconsistent with the theory advanced by plaintiff in error that Brown made Ables his agent to place the flag and that Ables' negligence is to be imputed to Brown, although Ables was a fellow car inspector. The two were fellow servants, and the act of the one in relying upon the other did not make a relationship of principal and agent whereby the employer can be absolved.

Considering the context of the statute, it is unimportant whether the negligence of the fellow servant, Ables, is called the negligence of the master or is called imputed negligence, for the liability of the carrier arises to any person suffering injury resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, and no "contract" or "rule" made for the purpose of attempting to establish a relationship between the employé and the carrier, to enable the carrier to exempt itself from the liability created by the act, can be sustained as effective in relieving the carrier.

[6] It is also argued that Brown must be held to have assumed the risk of the injury he sustained as a result of his reliance on his coemployé and the failure of his coemployé to place the flag and so protect him. The point is based upon a portion of the charge of the lower court to the effect that Brown did not assume the risks that were attendant upon the negligence of a fellow servant.

Clearly, under the act, the defense of assumption of risk is open to the carrier, except in actions brought under section 4, which provides that, in an action for damages for injury to an employé, "such employé shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. But Brown was not injured by reason of any defect in the machinery, or by reason of any danger normally or necessarily incident to the occupation of inspecting cars. The accident would not have happened at all, but for the negligence of a fellow servant; and as to employers, while engaged in interstate commerce, the servant so engaged does not agree, as between himself and the carrier, to assume the risk of the neg-

ligence of his fellow servant. Watson v. St. Louis R. Co. (C. C.) 169 Fed. 950. In Boldt v. Penn. Ry., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385, the court affirmed the action of the trial court in refusing to charge that "the risk the employé now assumes, since the passage of the federal Employers' Liability Act, is the ordinary dangers incident to his employment, which does not now include the assumption of risk incident to the negligence of defendant's officers, agents, or employés." The opinion expressed was that the requested charge was erroneous, because the action there brought was not one within the provisions of section 4 of the act. But as far as we are advised it has never been held that in an action brought under the statute, where an employé trusts to another to do an act necessary for his safety, and he himself is not aware of the failure of such employé to do the act, and actually goes on with his work, relying upon the performance of the act by his fellow servant, and by reason of the negligence of the employé relied upon injury follows, the risk of such negligence on the part of the fellow servant is assumed by the injured man.

In Illinois Central Railroad Co. v. Skaggs, 240 U. S. 66, 36 Sup. Ct. 249, 60 L. Ed. 528, upon a writ of error to review a judgment re-covered under the federal Employers' Liability Act, it was argued that the railroad company could not be negligent to an employé whose fail-ure of duty and neglect produced the dangerous condition. The court took it for granted that under the statute recovery by an employé for the consequences of actions exclusively his own could not be had. In qualifying the assumption, the court said in effect that where the injury to the employé does not result in whole or in part from the negligence of any of the agents or employés of the employing carrier, or by reason of any defect or insufficiency, due to its negligence, in its property or equipment, action would not lie. "But," continued the court, "on the other hand, it cannot be said that there can be no recovery simply because the injured employé participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier, and, if the injury to one employé resulted in whole or in part from the negligence of any of its other employés, it is liable under the express terms of the act; that is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a coemployé in the performance of his duty, that neglect must be attributed to the employer; and, if the injured employé was himself guilty of negligence contributing to the injury, the statute expressly provides that it shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé." This decision we believe to be applicable to the facts in the case before us. Brown, pursuing the usual practice at Yermo, may have participated in the act of failing to put up the flag; but Ables' failure was, in large part, the direct cause of the damage. Brown relied upon Ables, and in reliance upon him went on to perform his duty. By the express terms of the statute the negligence of Ables may be attributed to the carrier.

We find no error in the record, and affirm the judgment.
Affirmed.