STEVENS, RESPONDENT, *v.* HINES ET AL., APPELLANTS.

(No. 4,687.)

(Submitted March 14, 1922. Decided April 5, 1922.)

[206 Pac. 441.]

*Personal Injuries — Master and Servant — Railroads — Federal Employers' Liability Act — Negligence of Fellow-servants — Judicial Notice—Pleading and Proof—Immaterial Variance —Bill of Exceptions—Nonsuit.*

Summons—Order Refusing to Quash Service—When not Reviewable.
1.  An order refusing to quash service of summons is not reviewable on appeal where it is not incorporated in a bill of exceptions.

Personal Injuries—Railroads—Pleading and Proof—Immaterial Variance.
2.  In an action for personal injuries the complaint in which alleged that while plaintiff, a section foreman, was assisting in moving a rail, his coemployees negligently permitted it to drop and strike an iron bar plaintiff was using, causing the bar to strike plaintiff, *etc.,* whereas plaintiff's evidence showed that the bar was inserted in a hole in the rail which in turning carried with it the bar, striking plaintiff, the variance between pleading and proof was immaterial within the meaning of section 9183, Revised Codes of 1921.

Same—Trial—Nonsuit—When Improper.
3.  A nonsuit should never be granted unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it.

Same—Negligence of Fellow-servant—Liability of Defendant Under Federal Act.
4.  Where a section foreman and his crew were engaged in relaying rails on defendant company's track, an interstate carrier, in which work concerted action on the part of the men engaged in it was necessary for its successful performance, and his coemployees, instead of obeying his order to lift the rail, let go of the bars inserted in holes in the rail, causing it to roll over and one of the bars to strike plaintiff, the injury was due to their negligence for which defendant was liable under the Federal Employers' Liability Act.

Same—Negligence of Fellow-servant—Jury Question.
5.  Whether the conduct of plaintiff's coemployees referred to above (par. 4) constituted negligence for which defendant railway company could be held liable was determinable by the jury from a consideration of the question whether they as average men failed to exercise that degree of care which ordinary prudence required of them under the circumstances.

Same—Negligence of Fellow-servant—Assumption of Risk.
6.  As between himself and an interstate carrier, the servant does not assume the risk of the negligence of his fellow-servants.

6.  Applicability of state statutes and rules of law, as to assumption of risk, to actions under Federal Employers' Liability Act, see notes in 12 A. L. R. 701; Ann. Cas. 1915B, 481; Ann. Cas. 1917D, 922.

Same—Evidence—Assumption of Control Over Railroads by Government—
Judicial Notice.
7. Courts take judicial notice of the facts that the federal govern-
ment did not take over and assume jurisdiction of the railroads until
January 1, 1918, and that for injuries prior to that date it cannot
be held responsible.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

ACTION by Lon H. Stevens against Walker D. Hines, Director-General of Railroads, and the Chicago, Milwaukee & St. Paul Railway Company. From the judgment for plaintiff and from an order denying their motion for a new trial, the defendants appeal. Affirmed as to defendant railroad, and reversed and remanded as to the Director-General.

*Mr. Fred J. Furman* and *Mr. Leo J. Hanley,* of the Bar of Portland, Oregon, for Appellant, submitted a brief; *Messrs. Murphy & Whitlock,* of Counsel; *Mr. M. N. Whitlock* argued the cause orally.

Since Congress, by the Act of 1908 (35 Stats. at Large, 65), took possession of the field of the employer's liability to employees in interstate transportation, all state laws on the subject are superseded. *(Second Employers' Liability Cases,* 233 U. S. 1, 55, 38 L. R. A. (n. s.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 1 N. C. C. A. 875.) By the first section a right of action is conferred for injury or death of employee resulting from negligence in whole or in part of the carrier, *etc.* There are two divisions of this clause: One covering the negligence of any of the officers, agents or employees of the carrier, which has the effect of abolishing in this class of cases the common-law rule that exempted the employer from responsibility for the negligence of a fellow-employee of plaintiff; and the other relates to defects in appliances, *etc.* Plainly, however, the action is based upon negligence only, defects and insufficiencies not attributable to the negligence do not bind the carrier. Paragraph 4 eliminates the defense

of assumed risk where the carrier has violated the "safety appliance" Act or other safety statutes, and shows that the legislative intent was to preserve as a complete bar in all other cases, the doctrine of assumed risk.

Taking paragraphs 3 and 4 of the Act together, there is no doubt Congress recognized the distinction between contributory negligence and assumed risk. Contributory negligence involves the notion of some fault or breach of duty by the employee, and since it is his ordinary duty to take precaution for his own safety, contributory negligence may be defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, assumed risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of an employee. A workman of mature years is taken to assume the ordinary risks incident whether he is aware of them or not. Risks of another sort not naturally incident may arise out of the failure of the employer to exercise due care with respect to providing a safe place to work, and suitable appliances for the work. These the employee is not treated as assuming until he becomes aware of them, and the risk arising from them, unless the defect and the risk are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. (*Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. Rep. 24; *Schlemmer* v. *Buffalo, R. & P. Co.,* 220 U. S. 590, 55 L. Ed. 596, 31 Sup. Ct. Rep. 561; *Texas & P. Co.* v. *Harvey,* 228 U. S. 319, 57 L. Ed. 852, 33 Sup. Ct. Rep. 518; *Gila Valley etc. R. Co.* v. *Hall,* 232 U. S. 94, 102, 58 L. Ed. 521, 34 Sup. Ct. Rep. 229.) When the employee knows of the defect and appreciates the risk, if he then continues his employment without objection or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty.

The foregoing is substantially as it is stated in *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635. It sustains the position of defendants with respect to motions for nonsuit and directed verdict, and being a decision of the supreme court of the United States, is binding on all courts where the question is involved. The case of *Chesapeake & Ohio Ry. Co.* v. *De Atley,* 241 U. S. 310, 60 L. Ed. 1016, 36 Sup. Ct. Rep. 564, is squarely in point.

*Messrs. Wheeler & Baldwin,* for Respondent, submitted a brief; *Mr. B. K. Wheeler* argued the cause orally.

It is apparent that the injury was the result of negligence on the part of respondent's coemployees. The work in which the workmen were engaged was not work which could be performed by the workmen acting singly. The rails could not be so moved and put in place. Concerted action was thus not only necessary for the successful performance of the work, but was necessary, owing to the cumbersome nature of the material being handled, to secure the safety of the workmen engaged in it. When, therefore the men proceeded with the work according to the usual custom, any departure therefrom by any number of the workmen would be a negligent act, whether willfully or heedlessly performed, giving a workman injured thereby a right of action against them to recover for such injury; this on the principle that they failed to exercise that degree of care which ordinary prudence required of them under the circumstances. (Sections 5071, 5077, and subd. 2 of sec. 8099, Rev. Codes 1907; *Cules* v. *Northern Pac. Ry. Co.,* 105 Wash. 281, 177 Pac. 830, 831; *Cherpeski* v. *Great Northern Ry. Co.,* 128 Minn. 360, 150 N. W. 1091, 1092; *Meo* v. *Chicago & N. W. Ry. Co.,* 138 Wis. 340, 120 N. W. 344.) This liability is extended to the employing interstate carrier by the provisions of section 1 of the Federal Employers' Liability Act; (35 Stats. at Large, 65; 8 Fed. Stats. Ann., 2d ed., 1208;

U. S. Comp. Stats., sec. 8657; *Chesapeake & O. R. Co.* v. *De Atley*, 241 U. S. 310, 313, 60 L. Ed. 1016, 36 Sup. Ct. Rep. 564).

The burden of proving the assumption of risk was upon the defendant, and even in cases where there is evidence tending to show that the injury was one due to a risk necessarily incident to the business, the trial court cannot be charged with error in refusing to take the question from the jury unless the evidence is clear and from unimpeached witnesses. *(Kanawha & Michigan Ry. Co.* v. *Keres,* 239 U. S. 576, 581, 60 L. Ed. 448, 36 Sup. Ct. Rep. 174.) In the case at bar, it appears from the testimony that the facts do not bring the matter within the rule relating to the assumption of risk. The injury is clearly proven to have been the result of the negligent act of a coemployee.

The accident would not have happened at all but for the negligence of a fellow-servant; and as to employers while engaged in interstate commerce, the servant so engaged does not agree, as between himself and the carrier, to assume the risk of the negligence of his fellow-servant. (*San Pedro etc. Ry. Co.* v. *Brown,* 258 Fed. 806, 170 C. C. A. 100, 8 A. L. R. 865, 869; *Cules* v. *Northern Pacific Ry. Co., supra.*) An exception to this rule is made by some of the courts where the negligence of the fellow-employee is habitual or usual and the injured employee knew or by reasonable diligence ought to have known of the negligence, but even this modification is not available as a defense in this action. The testimony in this case fails to show that the negligent act causing the injury was habitual or usual.

It appears from the pleadings and proof in the case at bar that at the time respondent was injured, the defendant company was a common carrier by railroad engaged in interstate commerce; that respondent was employed by it in such commerce, and that the accident would not have happened at all but for the negligence of employees of the defendant

company working with him in that commerce in a common employment.

The rule is that such employees stood in the place of the employing company and that as to employers, while engaged in interstate commerce, the servant so engaged does not agree as between himself and the carrier to assume the risk of the negligence of his fellow-servant. (*San Pedro etc. R. Co.* v. *Brown,* 258 Fed. 806, 170 C. C. A. 100, 8 A. L. R. 865, 869; *Arizona E. Ry. Co.* v. *Bryan,* 18 Ariz. 106, 157 Pac. 376, 381; *Thompson* v. *Minneapolis etc. Ry. Co.,* 133 Minn. 203, 158 N. W. 42, 43; *Anest* v. *Columbia & P. S. R. Co.,* 89 Wash. 609, 154 Pac. 1100, 1105; *Devine* v. *Chicago, R. I. & P. R. Co.,* 266 Ill. 248, Ann. Cas. 1916B, 481, 483, 107 N. E. 595.) In cases in which it is held that the negligence of a fellow-servant may be considered as one of the assumed risks, it is uniformly held that to make the defense good, it must appear: First, that the negligence was either in fact known to the plaintiff or so customary that he must be charged with knowledge; and, second, that he must appreciate, or be bound to appreciate, the danger. (*Chapman* v. *United States Express Co.,* 192 Mich. 654, 159 N. W. 308, 310, 311; *Michigan Central R. Co.* v. *Schaffer,* 220 Fed. 809, 136 C. C. A. 413; *Yazoo & M. V. Ry. Co.* v. *Wright,* 235 U. S. 276, 59 L. Ed. 277, 35 Sup. Ct. Rep. 130.)

MR. CHIEF COMMISSIONER STARK prepared the opinion for the court.

This action was brought by plaintiff to recover damages for injuries alleged to have been sustained by him on account of alleged negligent acts of the defendants.

The complaint alleges the corporate existence of the defendant railway company; that as a common carrier by railroad it was engaged in commerce between several of the states; and that the defendant Hines was the Director-General of the United States Railway Administration, having super-

vision of interstate railroads, including the system of the defendant company; that the plaintiff was employed by the defendant company in such commerce as section foreman, and "that as such foreman he had the direction of the work of laying and repairing the track of certain portions of the road of said company, and on the twenty-seventh day of June, 1917, he had working under his direction several men, and on or about the said twenty-seventh day of June, 1917, while he and other employees were engaged in repairing the track of said company and in laying rails, * * * and while they were lifting said steel rails, plaintiff gave orders to the other employees to lift up on said rail, but, notwithstanding said orders so given, the other employees working with plaintiff negligently and carelessly permitted and allowed the said rails to *drop* and strike an iron bar which plaintiff then and there was using, causing said iron bar to strike plaintiff in and about the face, head, and shoulder, breaking, crushing and bruising the bones in and about his shoulder and bruising his face and head"; and that by reason thereof plaintiff was damaged in the sum of $20,000.

The defendants first appeared specially and moved the court to quash the service of summons, which motions were overruled. Thereupon they filed a joint answer, denying generally the averments of the complaint, except the corporate capacity of defendant company, that it was engaged in interstate transportation, and the appointment of Hines as Director-General of Railroads. The answer also contains separate and affirmative defenses of contributory negligence and assumption of risk by plaintiff, which special pleas were put in issue by plaintiff's reply. The case was tried before the court and a jury on December 23, 1919.

Plaintiff was the only witness who testified as to the manner in which the accident occurred. From his statement it appears that at the time in question he was employed by the defendant railway company as section foreman in its yards

at Butte, and was engaged in replacing certain steel rails on a passing track with rails of a heavier weight, and had five men working with him under his direction; two rails, each thirty-three feet long and weighing approximately 900 pounds each, had been fastened together by means of an angle bar, and placed on the ends of the ties alongside the track in immediate proximity to the place where they were to be used, and all that remained to be done was to turn the two rails over, line them up with the other rails, and spike them into position. Before beginning the actual work of replacement, the plaintiff ascertained that he had thirty minutes before the coming of a train in which to do the work, and thereupon he proceeded with his task in the following way: There were holes in the rails at each end, and also at the middle where they had been bolted together; into each of these three groups of holes there was inserted the small end of a "lining bar," a steel bar about six feet long. Plaintiff with another man was handling the bar at one end of the rails, two men were at the bar in the middle, and the other two men at the bar on the opposite end from the plaintiff. While in these positions, the men, with the plaintiff assisting, sought to turn the rails over by lifting up on the lining bars; they had lifted until all the bars had passed beyond the perpendicular, but were unable to roll the rails further by reason of the fact that the angle bar joining the two rails caught on some obstruction, whereupon the plaintiff called to the men two or three times, "Lift up," but the men, instead of lifting up, let go of the lining bars which they were handling, whereupon the rails rolled back, carrying with them the bar which plaintiff was handling, and the same struck him on the head and shoulder, causing the injuries complained of. The plaintiff was then a man fifty-seven years of age and had spent about twenty-five years in similar employment. The work being done at the time of the accident was performed

in the customary manner, with ample time and sufficient men to do it.

As to the extent of the plaintiff's injuries the testimony showed that, prior to the happening of the accident, he was a strong, healthy man, and never suffered pain when working or lifting, but that subsequent thereto he did suffer pain when working or lifting; that he was first treated for his injuries by Dr. Maginn in Butte, after which he went to a hospital in Deer Lodge, where he was operated on twice, being confined in the hospital for ten days on the first occasion, and nine days on the second; that at the time of the trial, which was approximately two and a half years after the accident, the fracture to the collar-bone had not yet been successfully reduced, and on account of his age it was questionable whether the two ends would ever unite; that the ends of the bone overlapped, and when he moved his arm one end of the bone would slide behind the other, causing irritation and pain. It was further shown that, although plaintiff was obliged to carry his arm in a sling for a period of seven months after the accident, he continued in his employment all the time and that his wages had been increased from $85 or $90 to $115 per month.

At the close of the testimony on the part of the plaintiff, defendants moved for a nonsuit upon three grounds: (1) That there was a fatal variance between the allegation of negligence and the proof of the same; (2) that the evidence was not sufficient to sustain a charge of negligence on the part of the defendants; and (3) that it appeared from all the evidence that the plaintiff was injured as a result of risks which he assumed in his contract of employment with the defendants. This motion was overruled. Thereupon the defendants rested their case, without introducing any testimony, and moved the court to direct the jury to return a verdict in their favor for the same reasons set forth in their motion for nonsuit, which motion was denied.

The jury returned a verdict in favor of plaintiff and against both defendants, upon which judgment was entered. From this judgment and an order denying defendants' motions for a new trial these appeals are prosecuted.

The defendants' first assignment of error has to do with the [1] refusal of the court to quash the service of summons upon the defendant railway company. This motion was based "upon the records, files, minutes of the court, and the affidavits of E. A. Tamm and Fred J. Furman." This matter cannot be considered, for the reason that the order of the court refusing to quash the service of summons is not embraced in any bill of exceptions, and is not before this court; and there is nothing here to show what "records, files, and minutes of the court"·were considered by the judge in making the order. (*Latimer* v. *Nelson,* 47 Mont. 545, 133 Pac. 680; *Smith* v. *Kirk,* 48 Mont. 482, 138 Pac. 1086.)

The decisive questions in the case are raised by defendants' [2] motions for a nonsuit and directed verdict. The basis of the motions on the ground of variance was stated by counsel in these words: "That if the plaintiff has proved a cause of action it is that the rail in turning carried with it the lining bar, and that the said lining bar in makng this movement struck plaintiff; there being no evidence that said lining bar was struck by the rail as alleged in said complaint."

Our statute provides: "No variance between the allegation * * * and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Sec. 9183, Rev. Codes 1921.)

Neither the motion nor the statement of counsel in connection therewith even suggested surprise at the alleged variance, or that defendant had been actually misled in maintaining the defense on the merits, by having to meet issues not pleaded. Under these conditions it cannot be held that the variance was material within the meaning of the section of the Code

above quoted. (*Robinson* v. *Helena L. & Ry. Co.*, 38 Mont. 222, 99 Pac. 837; *Matoole* v. *Sullivan*, 55 Mont. 363, 177 Pac. 254; *Wilcox* v. *Newman*, 58 Mont. 54, 190 Pac. 138; *Frederick* v. *Hale*, 42 Mont. 153, 112 Pac. 70; *Wertz* v. *Lamb*, 43 Mont. 477, 117 Pac. 89.)

The other grounds of the motions, *viz.*, that the evidence was not sufficient to sustain a charge of negligence on the part of the defendants, and that the plaintiff was injured as a result of one of the risks which he assumed in his contract of employment with the defendants, can best be treated together.

It is well established that on motion for nonsuit, every fact [3] is deemed to be proved which the evidence tends to establish, and if, viewed in the light most favorable to the plaintiff, the evidence makes out a *prima facie* case, it follows that a motion for nonsuit should be denied. A case should never be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it. (*Sprinkle* v. *Anderson*, 57 Mont. 223, 226, 187 Pac. 908; *Morelli* v. *Twohy Bros. Co.*, 54 Mont. 366, 370, 170 Pac. 757.)

The action is based on the provisions of the Act of April 22, [4, 5] 1908, Chapter 149 (Federal Employers' Liability Act), 35 Stats. at Large, 65, 8 Fed. Stats. Ann., 2d ed., 1208, as amended by Act of April 5, 1910, 36 Stats. at Large, 291, section 1, of which provides: "That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. * * * " (U. S. Comp. Stats., sec. 8657.)

Facts showing the employment of plaintiff as foreman of a section crew, by the defendant company under conditions bringing the case clearly within the provisions of that section

of the Act, are alleged in the complaint and admitted in the answer.

The standard by which the jury was called upon to measure the conduct of those working with plaintiff was that of the average man under similar circumstances. (*Daniels* v. *Granite Bi-Metallic Co.,* 56 Mont. 284, 289, 184 Pac. 836.)

It is apparent from the testimony of the plaintiff, which is undisputed, that the injury was the result of negligence on the part of his coemployees. The work in which the workmen were engaged was not work which could be performed by them acting singly. The rails could not be so moved and put in place. Concerted action was thus not only necessary for the successful performance of the work, but was necessary, owing to the great weight and the cumbersome nature of the material being handled, to secure the safety of the workmen engaged in it. When, therefore, the men proceeded with the work according to the usual custom, departure therefrom by the workmen by letting go of the lining bar, when they were directed to lift up, was a negligent act, whether willfully or heedlessly performed, giving to the plaintiff who was injured thereby a right of action against them to recover for such injury; this on the principle that they failed to exercise that degree of care which ordinary prudence required of them under the circumstances. (*Cules* v. *Northern Pac. Ry. Co.,* 105 Wash. 281, 177 Pac. 830; *Cherpeski* v. *Great Northern Ry. Co.,* 128 Minn. 360, 150 N. W. 1091.)

In the first case above cited, track employees engaged in interstate commerce were loading rails on a car by sliding the same up skids extending from the ground to the top of the car, and worked together by means of signals, upon one of which they paused within a few inches of the top until, upon giving another signal, they gave a final push, landing the rail on top of the car. The failure of the employees on one end of the rail to pause upon giving of the first signal, causing the other end to slide backward and injure the workman on such

end, was held to be negligence on the part of the employees disregarding the signal.

In the second case the plaintiff was a section foreman. He and those working with him were taking out rails from the defendant's main track and replacing them with others. The rails were first taken from the track and put to one side. Others were then put in their places, and the old rails placed on a push car and worked over on to another track and loaded on to a flat car. Plaintiff claimed he was injured through the negligence of his fellow-servants in throwing one end of the rail on to the car before the usual notice or warning was given, and it was held a proper case for the jury to determine whether the plaintiff's injury was the result of negligence of his coservants.

The liability for such negligence is extended to the employing interstate carrier by the provisions of section 1 of the Federal Employers' Liability Act, *supra*. (*Chesapeake & O. R. Co.* v. *De Atley*, 241 U. S. 310, 60 L. Ed. 1016, 36 Sup. Ct. Rep. 564.) In the case last cited, Mr. Justice Pitney, speaking for the court said: "The Act of Congress, by making the carrier liable for an employee's injury 'resulting in whole or in part from the negligence of any of the officers, agents or employees' of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a coemployee upon the same basis as the negligence of the employer."

It appears from the testimony that the facts do not bring the matter within the rule relating to the assumption of risk. The injury is clearly proven to have been the result of the negligent act of coemployees.

The accident would not have happened at all but for the [6] negligence of plaintiff's fellow-servants; and, as to employers while engaged in interstate commerce, the servant so engaged does not agree, as between himself and the carrier, to assume the risk of the negligence of his fellow-servants. (*San*

*Pedro etc. Ry. Co.* v. *Brown*, 258 Fed. 806, 8 A. L. R. 865, 869, 170 C. C. A. 100.)

Under the conditions disclosed by the record in this case it certainly could not be successfully argued that when plaintiff entered upon the performance of the work in which he was engaged when injured it was so apparent and obvious that his fellow-workers would let go the lining bars which they were using when they were directed to lift up, that he as an ordinarily prudent person should have observed and appreciated it, so as to impute to him the assumption of risk upon that theory. The pleadings and proof show that the accident which resulted in plaintiff's injuries occurred on June 27, [7] 1917. This court takes judicial notice of that fact that the federal government did not take over and assume jurisdiction of the railroads until after January 1, 1918, and that for happenings prior to the last-mentioned date it cannot be held responsible. (Sec. 10532, Rev. Codes 1921.) Consequently the judgment against the Director-General should not be allowed to stand.

We recommend that as to the defendant Chicago, Milwaukee & St. Paul Railway Company the judgment be affirmed, but that as to the defendant Walker D. Hines, Director-General, etc., the same be reversed, and the cause remanded to the district court, with directions to dismiss the complaint.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment rendered against the Chicago, Milwaukee & St. Paul Railway Company is affirmed; and as to the defendant Walker D. Hines, Director-General of Railroads, the same is reversed, and the cause is remanded to the district court with directions to dismiss the complaint.