PREZEAU, RESPONDENT, *v.* DAVIS, DIRECTOR-GENERAL, APPELLANT.

(No. 5,256.)

(Submitted May 22, 1923. Decided June 15, 1923.)

[216 Pac. 773.]

*Personal Injuries—Railroads—Master and Servant—Federal Employers' Liability Act—Defenses—Negligence of Fellow-servant—Assumption of Risk—Nonsuit—Proper Denial—Excessive Verdicts—New Trial.*

Personal Injuries—Railroads—Master and Servant—Defective Appliance—When Jury Question.

1. In an action by a railway track laborer for injuries caused by being thrown from a "speeder" which was derailed by reason of a broom fastened in front of it for the purpose of clearing the rails from snow, becoming detached and falling upon the track, where it appeared that there was no prescribed or well-established means of attaching it to the frame of the car, the question whether it was negligence to fasten the broom in a particular way was one for the jury's determination.

Same—Federal Employers' Liability Act—Fellow-servant Doctrine Abolished.

2. In an action for personal injuries brought under the federal Employers' Liability Act, which abolishes the fellow-servant doctrine, the question whether the negligent act was performed by the foreman of a section gang or by one of his subordinates becomes immaterial.

Same—Assumption of Risk—When Available to Defendant.

3. While the defense of assumption of risk in an action of the nature of the above is abrogated by the Act where an injury occurs through a failure of defendant to comply with any federal safety Appliance Act, the defendant may invoke it in all other cases.

---

3. Application and effect of the federal Employers' Liability Act on negligence and assumption of risk, see notes in Ann. Cas. 1915B, 481; Ann. Cas. 1916B, 484; Ann. Cas. 1917D, 922; 47 L. R. A. (n. s.) 49, 52, 69.

Same—When Employee Assumes Risk of Negligence of Fellow-servant.
   4. The rule that a railway employee does not assume the risk of
negligence of a fellow-servant in an action under the federal Em-
ployers' Liability Act is subject to the exception that when the
negligence and the consequent risk of injury are known to plaintiff
and he continues in his employment without objection or without
obtaining from his employer or his representative an assurance that
the defect will be remedied and the risk of injury is so imminent
that no ordinarily prudent man under the circumstances would rely
upon the promise, he assumes the risk.

Same—Master and Servant—Safe Place—Vice-principals.
   5. For the purpose of providing a safe place for an employee to
work or assuring him that a known defect will be remedied, a fore-
man is the representative of the master.

Same—Employee Continuing in Employment With Knowledge of Defec-
   tive Appliance—Assumption of Risk—Nonsuit—When Denial Proper.
   6. Under the above rules (pars. 5 and 6), *held,* that in view of the
evidence showing that plaintiff had complained to the foreman of
defendant company that the appliance which caused the derailment
of a gasoline motor-car was insecurely fastened to it and was as-
sured by the latter that the defect would be obviated, the case of
plaintiff did not show such a condition of affairs that the trial
court could say that the danger consequent upon not curing the
defect was so imminent that no reasonably prudent man would have
relied upon the promise to remedy it, and that therefore a nonsuit
was properly denied.

Same—Excessive Verdict—New Trial.
   7. *Held,* that where immediately after being thrown from a derailed
gasoline motor-car an injured section employee, aged fifty years,
walked six miles without assistance to a railroad station, re-
turned to work the next day and worked continuously for nearly ten
months thereafter, and up to time of trial had not consulted a physi-
cian, and the physician examining him just before trial found no in-
dication of organic trouble, the only objective symptoms of injury
being in the shoulder, legs and back, a verdict of $10,000 was so
excessive as to indicate passion and prejudice on the part of the jury,
necessitating a new trial.

*Appeal from District Court, Missoula County; Asa L. Dun-
can, Judge.*

ACTION by Arcade Prezeau against James C. Davis, Director-
General, as Agent under the Transportation Act of Congress
of February 28, 1920. Judgment for plaintiff and defendant
appeals. Reversed and remanded for new trial.

----

   7. Excessiveness of verdicts in actions for personal injuries other than
death, see notes in **Ann. Cas.** 1915D, 488; **Ann. Cas.** 1916C, 916; **L. R. A.**
1915E, 30.

[67 Mont. 523.]

*Mr. William Wayne* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

The defendant furnished the motor-car and brooms for the use of the section crew. There is no allegation or proof that the car and brooms furnished were defective. It became the duty of the men to use the means provided for the safe and proper performance of their work, and in the performance of such duties the foreman, Walters, and the balance of the crew, were fellow-servants. (*Goodwell* v. *Montana Cent. Ry. Co.,* 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Montana Union Ry. Co.,* 18 Mont. 493, 46 Pac. 264; *Mulligan* v. *Montana Union Ry. Co.,* 19 Mont. 135, 47 Pac. 795; *Northern Pac. Ry. Co.* v. *Charless,* 152 U. S. 359, 40 L. Ed. 999, 16 Sup. Ct. Rep. 848 [see, also, Rose's U. S. Notes]; *Martin* v. *Atchison, T. & S. F. Ry. Co.,* 166 U. S. 399, 41 L. Ed. 1051, 17 Sup. Ct. Rep. 603; *Whittlesey* v. *New York, N. H. & H. R. Ry. Co.,* 77 Conn. 100, 58 Atl. 459; *Bolt* v. *Pennsylvania R. R. Co.,* 245 U. S. 440, 62 L. Ed. 385, 38 Sup. Ct. Rep. 139; *Jones* v. *Southern Ry. Co.,* 175 Ky. 455, 194 S. W. 558.)

The undisputed facts make a clear case of assumption of risk. The method of fastening the broom was open and obvious, known by plaintiff, and the danger appreciated by him. Complaining of an appliance, or of a defect therein as being unsafe, is sufficient to show knowledge and appreciation of danger on the part of the person so complaining. (*Grant* v. *Nihill,* 64 Mont. 420, 210 Pac. 914; *Fortheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Golesh* v. *Utah Apex Min. Co.,* 49 Utah, 232, 162 Pac. 369; *Hightower* v. *Southern Ry. Co.,* 146 Ga. 279, L. R. A. 1917C, 481, 91 S. E. 52; *Jones* v. *Southern Ry. Co.,* 175 Ky. 455, 194 S. W. 558; *Kalivas* v. *Northern Pacific Ry. Co.,* 96 Wash. 309, 165 Pac. 96; *Howe* v. *Medaris,* 183 Ill. 288, 55 N. E. 724; *Chicago, R. I. & P. Ry. Co.* v. *Jackson,* 61 Okl. 146, 160 Pac. 736.)

*Mr. Harry H. Parsons* and *Mr. Geo. G. Witter,* for Respondent, submitted a brief; *Mr. Parsons* argued the cause orally.

Under the federal Employers' Liability Act the fellow-servant doctrine is abolished; and the co-worker is placed in the same category with the master, that is: Plaintiff must actually have known that the appliance was defective and dangerous, and have appreciated the risk, or else the defective and dangerous character and condition of the appliance must have been so patent and obvious that the law imputes knowledge of the danger and appreciation of the risk to him. There appears no escape from this. (*Chicago, R. I. & P. Ry. Co.* v. *Ward,* 252 U. S. 18, 64 L. Ed. 430, 40 Sup. Ct. Rep. 275; *Stevens* v. *Hines,* 63 Mont. 94, 206 Pac. 441.)

The duty of furnishing a reasonably safe place in which to work and reasonably safe appliances with which to work is a nondelegable duty, and the duty is a continuing one. (*Kreigh* v. *Westinghouse,* 214 U. S. 249, 53 L. Ed. 984, 29 Sup. Ct. Rep. 619 [see, also, Rose's U. S. Notes]; *Santa Fe Ry.* v. *Holmes,* 202 U. S. 438, 50 L. Ed. 1094, 26 Sup. Ct. Rep. 676.) "There is no reason why an employee should be exposed to dangers unnecessary to the proper operation of the business of his employer." (*Kreigh* v. *Westinghouse, supra; Choctow Ry. Co.* v. *McDade,* 191 U. S. 643, 45 L. Ed. 96, 24 Sup. Ct. Rep. 24 [see, also, Rose's U. S. Notes]; *Sandidge* v. *Atchison Ry. Co.,* 193 Fed. 867, 113 C. C. A. 653.)

The question of assumption of risk is generally a jury question. (*Hill* v. *Nelson Coal Co.,* 40 Mont. 1, 104 Pac. 876; *Stevens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29; *Hollingsworth* v. *Davis-Daly Co.,* 38 Mont. 143, 99 Pac. 142; *Sorenson* v. *Northern Pac. Ry. Co.,* 53 Mont. 268, 163 Pac. 560.)

The rule was quoted by Chief Justice Callaway when commissioner of this court in the case, a leading one, of *McCabe* v. *Montana Cent. Ry. Co.,* 30 Mont. 323, 76 Pac. 701 (37), as

follows: "No cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows as a matter of law that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish. (*Cain* v. *Gold Mtn. Mg. Co.,* 27 Mont. 527, 71 Pac. 1004; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Ball* v. *Gussenhoven, supra; Nord* v. *B. & M. Con. C. & S. M. Co., supra.*)"

Here the plaintiff called attention to the "boss" that another method of fastening or attaching the broom might be better, and then and there the boss said to him that it was all right, that he was going to wedge it, and that the method he was about to use and invoke would "hold the broom steady," and the plaintiff relied upon the superior knowledge of the foreman. The case falls within the rule announced in *Hill* v. *Nelson Coal Co.,* 40 Mont. 1, 104 Pac. 876, that under such circumstances a case for the jury was made out.

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

The plaintiff brought this action to recover damages for injuries sustained while in the employ of the defendant as a section laborer on the Northern Pacific Railway. The cause was tried on June 26, 1922. The jury returned a verdict in favor of the plaintiff in the sum of $10,000, and judgment was duly entered thereon. The defendant made a motion for a new trial which was denied, and appeal was taken from the judgment.

The first question for our consideration raised by the appeal is whether the evidence tended to establish any actionable negligence. On December 16, 1919, the plaintiff, the section foreman, and two other members of the crew, were riding on a gasoline motor-car, commonly called a "speeder." The track was covered with several inches of snow, and in order to give the wheels of the car proper traction, some means of removing the snow from the rails was required. For this purpose two

[67 Mont. 523.]

short-handled brooms were attached to the car in such a manner that they would sweep the rails before each of the front wheels.

On the morning in question, with the car equipped in this manner, they left Iron Mountain traveling west. After proceeding six miles they came to Spring Gulch, where a dismounted box-car .served as a depot. Here they stopped and left their dinner-pails, and did whatever work was necessary at that point. They then proceeded west. After going about a quarter of a mile, as the car was going around a curve, the left-hand broom became detached from its fastening and fell upon the rail in front of the wheels. This resulted in the derailment of the car, and the plaintiff, who was riding in front, was thrown off and injured by being pushed in front of the car. He seeks recovery upon the ground that it was negligence on the part of the section foreman to drive the car with the broom attached in an insecure manner.

The appellant contends that there was no negligence. It is claimed that brooms were customarily and generally used by all railroads for the same purpose; that they were attached in this case in the manner that was in customary and general use. This was by wedging each broom handle into a hole bored in a 2x4 attached to the front end of the car. Several witnesses who were experienced in the use of speeders on the Northern Pacific and other railroads testified as to the manner of attaching brooms for a similar purpose.

From this testimony it appears that brooms are in general [1] use, but that there is no prescribed or well-established means of holding .or attaching them. The brooms themselves vary in size. Some use long-handled brooms which are held in the hands of men riding on the front of the car. Even when short-handled brooms are secured in holes, as in the present case, there is no means of attaching them which is in customary or general use. Some use a round hole and some use a hole shaped with a chisel. Some flatten one side of the broom handle in order that a wedge may be used at all times. Some

[67 Mont. 523.]

apparently use a wedge only after the round handle becomes loose in the hole by reason of wearing of the wood. Whether the means of attaching the broom in a given case is or is not negligent depends entirely upon the skill and care of the one making the attachment. This is purely a question for the jury. (*Pullen* v. *City of Butte,* 45 Mont. 46, 121 Pac. 878.)

The action was brought under the provisions of the federal [2] Employers' Liability Act (Act of April 22, 1908, 35 U. S. Stats. 65; Am. Act April 5, 1921, 36 U. S. Stats. 291 [8 Fed. Stats. Ann., p. 1208, *etc.,* U. S. Comp. Stats., secs. 8657–8665]). There is no controversy as to whether it was properly brought under that Act. Section 1 provides that every common carrier by railroad while engaging in interstate commerce shall be liable in damages to any employee for injuries "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." This section has been held to have abrogated the common-law rule known as the "fellow-servant doctrine" and to have placed the negligence of the employee upon the same basis as the negligence of the employer. (*Chesapeake & O. R. Co.* v. *De Atley,* 241 U. S. 310, 60 L. Ed. 1016, 56 Sup. Ct. Rep. 564.) It is therefore immaterial in this case whether the negligent act of attaching the broom in an insecure manner was performed by the foreman or one of the other section laborers. It is conceded that the plaintiff himself did not even assist in attaching the broom.

It is very earnestly contended by the appellant that the [3] plaintiff is barred from recovery by the provisions of section 4 of the Act relating to the assumption of risk, which was pleaded in the answer as an affirmative defense. This section abrogates such defense where an injury has occurred through a failure to comply with any federal safety appliance Act. In all other cases the common-law defense of assumption of risk is still available. (*Sorenson* v. *Northern Pac. Ry. Co.,* 53 Mont. 268, 163 Pac. 560.) Independently of any statute directly upon the question, it was held in *Cameron* v. *Judith M. & C. Co.,* 61 Mont. 118, 201 Pac. 575, that the servant as-

sumes the risk of danger incident to the business of the master, but not of the latter's negligence.

By reason of the provisions of section 1 of the federal Employers' Liability Act, it is held that the negligence of a coemployee, when it is the ground of the action, is placed in the same relation as that of the employer upon the matter of assumption of risk. From this it follows that the employee does not assume the risk of negligence on the part of a fellow-servant. (*Stevens* v. *Hines,* 63 Mont. 94, 206 Pac. 441; *Chesapeake & O. R. Co.* v. *De Atley, supra; Chicago, R. I. & P. Ry. Co.* v. *Ward,* 252 U. S. 18, 64 L. Ed. 430, 40 Sup. Ct. Rep. 275; *Southern Ry. Co.* v. *Gadd,* 207 Fed. 277, 125 C. C. A. 21; *Wright* v. *Yazoo & M. V. R. Co.* (D. C.), 197 Fed. 94; *Sweet* v. *Chicago & N. W. R. Co.,* 157 Wis. 400, 147 N. W. 1054.)

The above rule is subject to one exception. When the negligence of the master or a fellow-servant and the risk of injury occasioned thereby are known to the employee, then if he continues in his employment without objection, or without obtaining from his employer or his representative an assurance that the defect will be remedied, he assumes the risk. (*Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635.) The latter case further holds: "If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

For the purpose of providing a safe place for an employee to work, or of assuring him that a known defect will be remedied, a foreman is the representative of the employer. (*Grant* v. *Nihill,* 64 Mont. 420, 210 Pac. 914.)

At the conclusion of the plaintiff's case, the defendant moved [6] for a nonsuit upon the ground that the plaintiff's own testimony proved conclusively that he had assumed the risk. The motion was overruled. A similar motion for a directed verdict was made at the conclusion of all of the evidence, which motion was likewise overruled. Separate assignments of error are made as to each of these rulings.

We will briefly examine the plaintiff's testimony upon which the defendant relies as supporting his motion for nonsuit. The plaintiff had worked on this section since the month of August preceding his injury. Prior to that time he had had a limited experience in section labor, but no experience in the use of such equipment as caused his injury. During the month of November there had been some snow and it had been necessary to use the brooms on the speeder. Upon one occasion as the crew was going to Coal Creek one of the brooms became detached and fell upon the track. The wheels of the car ran over it without mishap. On the morning of the day on which plaintiff was injured he had a conversation with the foreman at which time he suggested a different means of attaching the brooms to the car. Concerning this conversation the plaintiff testified as follows: "He said it would weaken the broom handle and it would break, so I didn't say no more. He said that at the time when I suggested that they bore the little holes, and stick a stick through; I said that on the morning that we had the accident. You see, it didn't snow every day. We just happened to have that snow, and it put in my mind the time we went to Coal Creek that the broom came out, but we didn't have no accident. I said, 'Probably if we had this on a curve, why it would be dangerous, where one of them come out,' and 'Oh,' he said, 'it would be all right; I'll stuff that hole up so that it will hold the broom steady.'"

Upon cross-examination he testified: "And when I told him that I thought we ought to have a nail he explained to me that it wasn't as good a way as this one; so we then went ahead working with this broom with this wedge."

It thus appears that the foreman assured the plaintiff that the danger, of which he was aware, would be obviated. Because the plaintiff knew that upon one occasion a broom had come out, when secured by means of a wedge, he was not bound to know that a wedge was necessarily unsafe. For all he knew the broom had come out, not because a wedge had been used to secure it, but because it was carelessly inserted. Upon the occasion in question, he was assured that the hole would be stuffed up "so it would hold the broom steady." We cannot say, nor could the trial court say, that the danger was "so imminent that no ordinarily prudent man under the circumstances would rely upon such promise." Having in mind the familiar rule that on a motion for a nonsuit the evidence must be viewed in the light most favorable to the plaintiff, and that it must be held to have proved everything which it tends to prove, the trial court could do nothing but overrule the motion. The ruling would be sustained upon the theory that the representative of the employer had assured the plaintiff that the defect would be remedied. For the same reasons it was not error to overrule the motion for a directed verdict.

The jury were instructed upon the matter of assumption of risk. One of the grounds of the defendant's motion for a new trial was that the verdict is against the law, in that the jury disregarded this instruction in finding the issue upon that matter in favor of the plaintiff. No objection to any of the instructions given appears to have been made by either party. Taken as a whole, they gave a substantially correct statement of the law. The verdict may be sustained upon the ground which sustained the court in overruling the motion for nonsuit.

Finally, it is contended that the trial court erred in denying [7] defendant's motion for a new trial, on the ground of excessive damages, appearing to have been given under the influence of passion and prejudice. We are of the opinion that this contention has merit. As we have stated before, the verdict upon which judgment was rendered was in the sum of $10,000. At the time of plaintiff's injury he was fifty years of

age. His earning capacity was such that, had he been totally and permanently disabled as a result of his injury, the amount awarded would not have been excessive.

The evidence proves conclusively that immediately after the plaintiff was thrown from the car he got up without assistance before any of his companions could reach him. He had a cut on his left knee of which he complained at the time. He also complained of pain in his back and right shoulder. No other complaint was made at the time. By reason of the fact that the rear axle of the car was bent in the derailment, it was necessary that the section crew walk back to Bull Mountain, a distance of six miles. The plaintiff walked this distance without assistance ahead of the other men, as they remained behind attempting to straighten the axle. After reaching Bull Mountain he crossed the river, walking to Superior, a further distance of a half mile. Here he purchased some liniment for his injuries, but declined to consult a physician, although the railroad company employed one at that place. The next day he went back to work on the section. He worked continuously, with the exception of a few days until the 15th of October following his injury. During this time he complained some of pain in his back, shoulder and leg, and was relieved of some of the more strenuous duties by the foreman and the other laborers. After he quit the employ of the company he lived alone in a shack along the railroad right of way. He cut his own firewood and cooked his own meals. He cleared off a space about fifty feet by a hundred feet around his cabin, which space had been covered by small pine trees. Occasionally he went deer hunting around the foot of the mountains about six miles away.

The plaintiff gave testimony as to the extent of his injuries, which, if worthy of belief, would have been sufficient to establish total permanent disability. According to his testimony, in addition to the bruises which covered his entire body, all the vital organs of the body, both internal and external, were permanently injured as a result of the accident. We cannot be-

lieve that a man who really had sustained one-half the injuries the plaintiff claims to have received would have lived. He certainly would not have walked six miles the same day and gone to work the next day. In spite of the plaintiff's terrible injuries, as described by himself, he does not appear to have consulted a physician at any time until a few days prior to the trial. The purpose of this was not to obtain relief, but expert testimony.

The physician who made the examination and testified for the plaintiff found no indication that he had received organic injury. He testified, contrary to the claim of plaintiff himself, that he did not think a kidney condition could result from the injury; that he could find no nervous disorder; that his testicles gave no appearance of injury; and that he has control of his bowels. The only objective symptoms of injury that the doctor could find were in the shoulder, legs and back. The left leg was a quarter of an inch larger than the right. This he thought might be permanent.

The plaintiff undoubtedly received some injury, and if upon a new trial the jury should find the issues in his favor upon the question of negligence and assumption of risk, is entitled to some damages. But there is not any evidence before us of injury, permanent or otherwise, that will justify an award of damages in the sum of $10,000. The verdict of the jury manifestly was given under the influence of passion and prejudice and a new trial must be awarded. (*Hanley* v. *Great Northern Ry. Co.*, 66 Mont. 267, 213 Pac. 235; *Gillispie* v. *Great Northern Ry. Co.*, 63 Mont. 598, 208 Pac. 1059.)

We recommend that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion the judgment appealed from is reversed and the cause is remanded to the district court, with directions to grant a new trial.

*Reversed and remanded.*