SAMUEL E. BARR, PLAINTIFF IN ERROR, v. PEN CARBON MANIFOLD COMPANY, DEFENDANT IN ERROR.

Submitted March 27, 1911—Decided June 19, 1911.

1. In an action by a servant for personal injuries alleged to have been sustained by the giving way of one of the rungs of a ladder on which he was standing—*Held*, on the evidence, that the question of the way in which the accident happened was for the jury.

2. In an action by a servant for personal injuries—*Held*, on the evidence, that whether defendant's general manager was authorized to promise repairs, and on complainant's complaint of the defective condition of a ladder promised to repair it, and directed plaintiff to use it meanwhile, and whether it had been repaired at the time of the plaintiff's injury were questions for the jury.

3. It must be a very plain case to justify the court in taking from the jury the question whether a danger from a known defect is so great and imminent that a prudent man after a promise to repair, would be guilty of contributory negligence in not hazarding his employment rather than take the risk.

4. In an action by a servant for personal injuries caused by his fall from a ladder which he had complained of as defective, and which defendant's general manager had promised to repair, with directions to use it meanwhile—*Held*, on the evidence, that the question of whether the danger from the defect was so imminent that plaintiff's continued use of it was contributory negligence was for the jury.

5. A master may be liable for injuries to a servant caused by defective tools or appliances, or the unsafety of a place of work, if he has promised to repair the defect or make the place safe, and the servant continues the work in reliance upon the promise, though the risk be obvious; and this rule applies whether the master's promise to repair relates to simple or intricate appliances.

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch, Jr.*

For the defendant in error, *Alan H. Strong.*

The opinion of the court was delivered by

SULLIVAN, J. This is a writ of error to the Supreme Court. At the close of defendant's case, a verdict was rendered by direction of the court in favor of defendant.

Samuel E. Barr, the plaintiff in this case, was injured while in the employ of the defendant, by reason of the giving way of one of the rungs of a ladder upon which he was standing, while oiling shafting in defendant's factory. The sides of the ladder were oblong pieces of wood and the rungs were mortised into the sides and secured at either end by nails.

Plaintiff testified that several of the rungs were loose and could be shifted back and forth with the hand; that he had complained of such condition to the general manager of defendant two days before the accident, and used the ladder in that condition upon the general manager's direction so to do, coupled with a promise to repair the ladder. For the purpose of oiling some shafting which he said it was his duty to oil, plaintiff had placed the ladder so that the top rung thereof rested against a hanger suspended from the ceiling and through which the shafting operated, the other end of the ladder being upon the floor. Plaintiff said he mounted the ladder, and, while standing on the fourth or fifth rung from the top, the rung upon which he was standing pulled out from the right-hand side and threw him so that he was caught in the belting and injured.

The defendant denied that the ladder was defective and also denied that the accident happened by reason of the loosening of the rung, as claimed by plaintiff. Defendant showed that the surface of the hanger against which plaintiff had rested the top rung of the ladder was rounded, and claimed that the ladder fell by reason of the insecurity of its position, causing the injury to plaintiff. No one saw the accident; plaintiff, when found, was unconscious. Defendant further showed that immediately after the accident the ladder was found leaning against the wall, with the top rung loosened from the side, and that no other rung was loosened. A ladder was produced in court by defendant, which defendant claimed was the one upon which plaintiff was standing at the time of the accident, and endeavored to show, by the physical condition of the fourth and fifth rungs, which were mortised into the sides, that the accident could not have happened in the manner testified to by plaintiff. In view of the testimony of the car-

penter produced by defendant that the fourth and fifth rungs looked as if they had been renailed in the same holes, it appears to us that this contention of defendant was not sustained, and this being removed from the case, the manner of the happening of the accident was a jury question.

The difficulty in the case centers around the complaint by the plaintiff of the defect in the ladder, the promise to repair it, made by the general manager of defendant, coupled with the direction to continue to use the ladder, and the effect of that promise.

Plaintiff testified that he was instructed, when employed, to apply to one Kincade, the general manager, for whatever was required. This was in October, 1906; that in February, 1907, Archbold, a new superintendent, came to the factory, but that Kincade remained there in his former capacity; that the accident happened in March, 1907; that a few days before the accident, he complained to Kincade of the defective condition of the ladder, and Kincade told him that defendant would fix it, and to go ahead and use it; that the ladder had not been repaired up to the time of the accident.

Archbold, the new superintendent, testified that upon his taking charge of the factory he made new agreements with the employes, and relieved plaintiff of any duty that might have been his of oiling the shafting. This plaintiff denied. Archbold also testified that Kincade had no authority to promise repairs.

From a careful examination of the evidence, we are satisfied that a jury could find that the ladder was defective; that plaintiff had complained to Kincade; that Kincade had promised to repair it and had directed plaintiff to use it in the meanwhile; that Kincade was authorized to promise repairs; that that authority continued after the change of management, and that the ladder had not been repaired up to the time of the accident. There remain to be considered but two points—*first,* whether it was contributory negligence in law for plaintiff to use the ladder in its defective condition, notwithstanding the promise to repair, and *second,* whether a promise to repair so simple an appliance as a ladder and one

so easy of repair by plaintiff himself will negative the doctrine
of assumption of risk.

As to the first point, it is, of course, true that a danger may
be so great and so imminent that a prudent servant, notwith-
standing a promise to repair, should hazard his employment
rather than incur it. But it must be a very plain case of this
kind that will justify the court in taking the question of con-
tributory negligence from the jury. *Dowd* v. *Erie Railroad
Co.,* 41 *Vroom* 451; *Dunkerley* v. *Webendorfer Machine Co.,*
42 *Id.* 60; *Towler* v. *Adamant Company,* 50 *Id.* 140;
*Labatt Mast. & Serv.* 1025, § 427, where it is noted that the
natural disinclination of a workman to disobey orders is an
important element in the determination of this question.
Whether the danger was so imminent in this case was for the
jury to determine. There was no testimony that any of the
rungs had ever come out prior to the accident, but that some
of them were loose, and clearly the general manager of defend-
ant did not consider the danger imminent, for he directed
plaintiff to use the ladder.

As to the second point, there is considerable authority for
the proposition that a promise by the master to repair simple
tools or appliances is not sufficient to negative the doctrine of
assumption of risk. *Marsh* v. *Chickering,* 101 *N. Y.* 396, is
a leading case on this subject; other cases will be found col-
lected in the case note to *Brouseau* v. *Kellogg S. & S. Co.,* 27
*L. R. A.* (*N. S.*) 1052, and in *Labatt Mast. & Serv.* 1222,
1223, *note* 8; but on page 1224 Labatt argues against this
proposition, and, we think, successfully. See, also, *Brouseau*
v. *Kellogg S. & S. Co., supra,* and the case note thereto.

It is the law of this state that although the risk be obvious,
the master may still be liable for injuries to the servant, caused
by defective tools or appliances or the unsafety of the place of
work, if the master has promised to amend the defect or make
the place safe, and the servant continues the work in reliance
upon the promise. *Dowd* v. *Erie Railroad Co., supra; Dun-
kerley* v. *Webendorfer Machine Co., supra.* The theory of
these cases is that the servant may put the responsibility for
the use of defective appliances upon the master, if the master

chooses to assume it. On principle it is difficult to perceive
how the question of the simplicity or intricacy of the appli-
ances has anything to do with it. An expert workman has just
as thorough a knowledge of the construction and operation of
intricate machinery as a non-expert workman has of simple
appliances, and the defect in the intricate machine may be just
as obvious and as easy to repair to the expert as the defect in
the simple tool to the non-expert. As was said by the court,
in *Louisville Hotel Co.* v. *Kaltenbrun,* 26 *Ky. Law Rep.* 208:
"The difference between a simple instrument and a complex
one vanishes when the servant understands that it is dan-
gerous to further use it."

To say that the servant, as a matter of law, must, in a given
case, waive his right of putting the responsibility for the
further use of a defective appliance upon the master, by com-
plaint and promise to repair, and take the responsibility him-
self by either making his own repairs or going without them,
would break down the rule in a large measure.

The cases referred to above which hold that there is a dif-
ferent rule of law to be applied where the complaint and
promise to repair is in reference to simple appliances than
where such complaint and promise is in reference to intricate
appliances, seem to confuse the doctrine of assumption of risk
with that of contributory negligence. Mr. Justice Swayze re-
fers to this confusion of thought in *Dowd* v. *Erie Railroad Co.,*
*supra.* The defence of contributory negligence is not affected
in any way by holding that a promise to repair negatives the
doctrine of assumption of risk in regard to simple tools, as
well as in regard to intricate appliances.

We therefore conclude that the doctrine enunciated in *Dowd*
v. *Erie Railroad Co., supra,* that although the risk be obvious,
the master may still be liable for injuries to the servant caused
by defective tools or appliances or the unsafety of the place of
work, if the master has promised to amend the defect or make
the place safe, and the servant continues the work in reliance
upon the promise, applies whether the master's promise to
amend refers to simple or intricate appliances.

. The judgment should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 13.