MISSOURI, K. & T. RY. CO. OF TEXAS v. BROWN. (No. 7413.)

(Court of Civil Appeals of Texas. Dallas. Nov. 13, 1915. Rehearing Denied Dec. 24, 1915.)

1. MASTER AND SERVANT ⟨⟩220—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

An employé, who without protest continues in the employer's service after he has learned or by proper diligence should have known of a defect in a tool or implement furnished for his use, or who simply protests, and without any promise or anything said or done by the employer to induce him to remain in the service in the confidence that repairs will be made continues to use the defective article, assumes the risk incident thereto.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 625–637, 641, 644–647; Dec. Dig. ⟨⟩220.]

2. MASTER AND SERVANT ⟨⟩221—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

When an employé complains to the employer of a defect in a tool or implement and receives a promise that it will be removed, there is no assumption of the risk by a mere continuance of the use of the defective appliance, at least until a reasonable time for the removal of the defect has elapsed, provided the continuance

in the service is upon the faith of such promise and in the expectation that it will be fulfilled.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–640, 642–645; Dec. Dig. ☞221.]

3. MASTER AND SERVANT ☞221—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

Plaintiff, a section hand, injured by a defective lifting jack, never complained in person about the jack, and no promise was made to him individually that a new one would be furnished, but it appeared that the section foreman recognized the defective condition of the jack and the danger incident to its use, that the section men, or some of them, in plaintiff's presence and hearing, protested against its use and several of them started at times to quit, that the foreman promised to get and furnish them a new jack, that the foreman understood that the complaint was made by or in behalf of all of the men, that the promise was made not only to plaintiff's colaborers, but to him as well or for his benefit, and that the foreman repeatedly stated that the jack would be received in a week or so. *Held*, that plaintiff had a right to rely on the promise, and did not as a matter of law assume the risk of injury by continuing work in reliance on such promise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–640, 642–645; Dec. Dig. ☞221.]

4. MASTER AND SERVANT ☞280—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

In a section hand's action for injury caused by a defective lifting jack, plaintiff testified and the jury found that he intended to continue in the employment, using the jack, if he had not been hurt. The jury further found, however, that the foreman promised to replace the defective jack with a new one for the purpose of inducing plaintiff and the other men engaged with him to continue in their work, and there was evidence that some of the men objected to using the jack, but that they thought the foreman was looking for a jack all the time and thought they could work on until the other jack came. *Held*, that it reasonably appeared that the promise was relied on by plaintiff and induced him to continue to use the defective jack, his testimony and the finding of the jury being open to the interpretation that his intention was to continue in the service until the new jack arrived, and not indefinitely, regardless of the defective condition of the jack and the failure to provide a new one.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981–986; Dec. Dig. ☞280.]

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Action by Rufus Brown against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

C. C. Huff, of Dallas, and W. R. Abernathy and Wallace Hughston, both of McKinney, for appellant. E. W. Merritt, R. C. Merritt, and F. E. Wilcox, all of McKinney, for appellee.

TALBOT, J. Appellee sued appellant to recover damages for personal injuries received by him while employed by appellant as a section hand. The petition alleges, in substance, that on the 21st day of January, 1914, the plaintiff was in the employ of the defendant on the McKinney section of its railroad track, using a lifting jack in repairing the same, under Kirby, the section foreman; said Kirby directing his work, with authority to employ and discharge the plaintiff, plaintiff being subject to said Kirby's orders, direction, and commands in performing his said work. That plaintiff was hurt and injured by reason of the negligence of defendant, its agents, and employés in this: The said jack furnished plaintiff with which to work and with which to raise and lower said track was old, broken, worn, out of repair, and would not work properly, all of which was known to said defendant and to its vice principal, Kirby; that said Kirby knew of such defective condition of said jack a long time prior to the time plaintiff was injured or by the exercise of ordinary care could have known the same; that he had promised plaintiff and said hands that he would repair said jack, but failed to do so, and notwithstanding this he directed the plaintiff and the other hands working with him to use said jack and to use their hand in tripping it and lowering the same; that in tripping said jack and without any fault or negligence on his part, but because of its defective condition, the jack fell and caught plaintiff's finger and cut it off as aforesaid; that defendant did not use that degree of care and caution required by law to furnish plaintiff with a reasonably safe jack with which to work, and by reason thereof in using said jack the same caught plaintiff's finger and he was injured as aforesaid.

In a trial amendment filed September 29, 1914, it was further alleged that defendant's section foreman, Kirby, knew of the defective condition of the jack in question, and stated in the presence of plaintiff that he would get a new jack for himself and those working under him, and that he had ordered a new jack for their use, and plaintiff relied upon such promise; that it was under these conditions that plaintiff continued to work. The defendant pleaded a general denial, contributory negligence, and assumed risk. It was further pleaded and proved that defendant was engaged in interstate commerce, and that the railroad track upon which plaintiff was working was used by it at the time plaintiff was injured in both intrastate and interstate commerce, and hence plaintiff's alleged cause of action was governed by what is known as the federal Employers' Liability Act. Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, §§ 8657–8665). The case was tried before the court and a jury; the court giving a general charge, and in connection therewith submitting certain special issues. The record does not show that a general verdict was rendered, but that upon the jury's findings upon the special issues submitted to them, judgment was rendered in favor of the plaintiff for the sum

of $900. From this judgment the defendant appealed.

We deem it unnecessary to state and discuss seriatim the several assignments of error. The controlling question presented is whether or not the evidence conclusively showed that the plaintiff assumed the risks and responsibility for the injury that resulted to him from the use of the defective lifting jack. And a decision of this question turns upon the further question of whether or not the defendant's foreman and vice-principal, Kirby, promised to replace the defective lifting jack with which plaintiff was directed to work in performing the duties required of him, with a new one, and that such promise was relied on by plaintiff and induced him to continue in defendant's employment.

Plaintiff's finger was injured substantially in the manner and to the extent alleged by him; the jack with which he was working when hurt was defective in that the clutch, or what is called a "dog" that holds the lifting lever or handle, which works in notches, when the same has been elevated to the desired height and by which the lever could be easily tripped and the railroad track upon which plaintiff was working lowered with safety, was broken off. The jury found that the defendant was guilty of negligence in furnishing the plaintiff a broken and defective lifting jack with which to perform the work required of him, and that plaintiff was guilty of contributory negligence in using the jack in the manner in which he did; that plaintiff sustained damages by reason of his injuries in the sum of $1,200, and that the proportion of negligence attributable to him was one-fourth. They found that plaintiff did not assume the risk of injury incident to the use of the jack, and, bearing upon this issue, made the following further findings: (1) That the defendant's section foreman and vice principal, Kirby, under whom plaintiff was working, knew of the defective condition of the jack; (2) that he promised to replace the defective jack with a new one; (3) that this promise was made for the purpose of inducing the plaintiff and the other employés of defendant working under Kirby to continue in their work; (4) that the plaintiff did not make, in person, any objection to defendant's foreman, Kirby, to further working or discharging his duties with the lifting jack; (5) that plaintiff intended to continue in the employment of the defendant using said lifting jack, if he had not got his finger hurt; and (6) that prior to his injury plaintiff knew that the lifting jack was defective, and that it was dangerous to trip it in the manner in which he did.

The contention of the defendant, appellant here, is in substance, first, that the trial court erred in refusing to give its special charge directing the jury to return a verdict because the undisputed evidence in the case showed that at the time plaintiff was injured he knew the jack in question was defective and that it was dangerous to trip it in the manner in which he did, hence he assumed the risk incident to the use thereof; second, that the finding of the jury that the plaintiff did not assume the risk in attempting to trip the jack in the manner in which he did, is not supported by the evidence, and is contrary to the undisputed evidence in that it is shown that the plaintiff, at and prior to his injuries, knew that the jack was defective and dangerous to trip in the manner in which he did, and made no objection to continuing in the discharge of his duties with the defective jack, and there was no evidence in the case showing that the defendant made any promise to replace the jack for the purpose of inducing the plaintiff to continue in the discharge of his duties with the same, and there was no evidence that the plaintiff relied upon any promise made to him to replace said jack by the defendant.

[1, 2] The general rule is well established that "an employé, who without protest continues in the service of the master after he has learned, or by proper diligence should have known, of a defect in the tool or implement furnished for his use, or who simply protests and, without any promise or anything said or done by the master to induce him to remain in the service in the confidence that repairs will be made, continues to use the defective thing, assumes the risk incident thereto. But when the servant complains to the master of the defect and receives a promise that it will be removed, it is generally held that there is "no assumption by the servant of the risk by a mere continuance of the use of the defective appliance, at least until a reasonable time for the removal of such defect has elapsed after the promise." Railway Co. v. Bingle, 91 Tex. 287, 42 S. W. 971; Id., 9 Tex. Civ. App. 322, 29 S. W. 674; Railway Co. v. Williams, 82 Tex. 343, 18 S. W. 700; Railway Co. v. Kern (Civ. App.) 100 S. W. 971. The effect of the decisions upon the subject is, that mere protest and promise will not suffice. To relieve himself of the assumption of the risk under the circumstances mentioned and impose it upon the master, the servant, who objects to the use of the defective implement and obtains the master's promise to repair or replace the defective tool with one not defective, must have continued in the service upon the faith of such promise and expectation that it would be fulfilled. The plaintiff in the present case made no complaint personally to the defendant's foreman, Kirby, of the defective condition of the lifting jack with which he was working at the time he was injured, and no promise was made to him individually that the lifting jack would be repaired or a new one furnished. Other employés of the defendant, however, at work with the plaintiff under its section foreman, Kirby, did, in the presence and hearing of the plaintiff, protest against

the use of the defective jack, and obtained from said foreman a promise that such jack would be replaced with a new one. The plaintiff was the only witness called to testify in relation to the defective condition of the lifting jack, the protest made against its use, and the promise of defendant's foreman to replace the jack with a new one. Plaintiff, among other things, said:

"When I got hurt, I was working with a railroad jack on the track. * * * At the place where the cog come out, you had to stick your finger in it, to trip it and lower the jack down. Mr. Kirby, the foreman, furnished us the jack to work with, and we did not have any other jack there besides that one. Yes; the foreman knew the jack was broken. I have heard him say several times that the jack was broken, and to be careful with it; he knew how we would throw it. All the boys that worked on the track would throw it just like I did, by putting their finger in the eye of the jack and tripping it. Mr. Kirby knew that that was the way we were tripping it. The section foreman, Kirby, employed and discharged the hands and directed them what to do down there. He employed the section hands and paid them and discharged them. I was paid by the section foreman, and was also hired by the section foreman, Kirby. Mr. Kirby says, 'Boys, you will have to use this defective jack till we get a better jack,' time after time, and whenever he would hire a new hand he would tell him about this jack being broke. Well I started to quit several times, because I didn't want to use that jack that way, and several of the others started to quit; but we had the work, and didn't have anything else to do, and it was winter time and we had to live. * * * We hated to quit. We were taking chances on this jack being defective. Well, he never said anything about the other jack coming, but kept saying it would be here in a week or so. At that time we were raising the track to put ties under the track. Well, we had raised it, and I was tripping the jack, when I got my finger hurt. When I stuck my finger in there to trip it, it just dropped down with me, and caught my finger, and cut it off, part of it; cut off that finger nail joint; cut off some of the bone. It is a fact that I had been tripping the jack for quite a while with my finger, and never got it mashed off, and this time I put it in there and got it mashed off. I don't know exactly how long I had worked with the jack, but I think three weeks, and I had been working with the jack in that way during the three weeks, and I suppose it was just like it was when I got hurt. Yes; I had been told to be careful with it; that it was dangerous. No; I never saw any trip or dog on the jack, and I had been tripping it with my finger during the three weeks. I didn't make any complaint about the jack myself, only they were saying it was broken; I did not personally. I went on and worked with the jack, and did not complain myself about it to the foreman. * * * No; I personally did not say anything to him about the jack; he knew it was defective, and knew it was dangerous. Yes; I went on and worked without complaining, and intended to work on if I had not got my finger hurt. Before I put my finger in there I could look over and see all the time how to put my finger in there before I put it in there, but I didn't do that; I just rammed my finger in there and let it come down. But if I had looked I could have seen very easily that I ought not to have put my finger in there so far."

[3] Thus it appears that the plaintiff did not in person complain of the defective jack, and that no promise was made to him individually that a new one would be furnish-

ed. It is quite clear, however, from the undisputed testimony, that defendant's foreman recognized the defective condition of the jack and the danger incident to its use; that the section men working under the said foreman as a body, or some one of them, in the presence and hearing of the plaintiff herein, protested against the use of the jack, and several of them started several times to quit, and that defendant's foreman, Kirby, promised to get and furnish them a new jack with which to work. The evidence does not disclose which one of the section men made complaint of the jack, but that such a complaint was made, and that defendant's foreman understood that it was made by or in behalf of all the men, including the plaintiff, and that the promise to secure and furnish a new jack free from defects was made not only to plaintiff's colaborers, but to him as well, or for his benefit, are deductions which, from the evidence, cannot well be escaped. This promise, as before stated, was made in the presence and hearing of plaintiff, with the statement several times repeated, "Boys, you will have to use this defective jack till we can get a better jack." As to when the section men might expect the arrival of the new jack the testimony discloses that it had been ordered, and that the foreman repeatedly stated that he would receive it "in a week or so."

That the plaintiff had a right to rely on the promise made to furnish the new jack under the circumstances of this case is affirmed, we think, by the decision in the case of Railway Co. v. Sadler, 38 Kan. 128, 16 Pac. 46, 5 Am. St. Rep. 729. We copy from the syllabus of that case the following, which fairly shows the ruling of the court:

"A section foreman told employés on his section that the railroad company had promised to send him new tools in place of those in use, known to be defective. This promise inured to the benefit of all employés at work on the section in whose hearing and presence it was made; and if, after a reasonable time has elapsed, and the new tools are not furnished, an employé on the section is injured by the use of the defective tool, the company cannot defeat his recovery because the promise was not made to the injured employé individually."

We concur in the views here expressed by the Supreme Court of Kansas, which are not at variance, so far as our knowledge extends, to any decision of our own courts, and so similar are the facts in the case now before this court to the facts in that case that we cite the latter as authority directly in point, sustaining the conclusion that plaintiff, Brown, by reason of the protest against the use of the lifting jack involved here, and the defendant's promise or assurance that a new one would be furnished, could not be charged, as a matter of law, under the facts of this case, with having assumed the risk of injury from the use of said jack.

[4] The fact that the jury found, upon testimony which seems to have warranted it, that the plaintiff intended to continue in the

employment of the defendant, using the lifting jack, "if he hadn't got his finger hurt," does not, under all the facts and circumstances in evidence, require a holding that he did not rely upon the promise to furnish a new jack. The plaintiff had the right to wait a reasonable time for the fulfillment of the foreman's promise to provide for him and his associates a new jack, and the finding itself, are subject to the interpretation that the plaintiff meant and the jury found that his intention was to continue in defendant's service until the new jack arrived, and not indefinitely, regardless of the defective condition of the jack that hurt him and the failure of the foreman to provide the new one. At one place in his testimony he said:

"Yes, I went on and worked without complaining, and intended to work on if I had not got my finger hurt."

At another place he said:

"Some of the boys objected to using it [the jack] in any way, but we thought the section foreman was looking for a jack all the time, and I thought we could work on until the other jack came."

The jury found that the defendant's foreman promised to replace the defective jack with a new one for the purpose of inducing the plaintiff and the others engaged with him to continue in their work, and we think it reasonably appears that such promise was relied upon by the plaintiff and induced him to continue to use the defective jack until he was injured.

The views expressed render it unnecessary to consider the question as to whether or not the plaintiff should be held to have assumed the risk of injury but for the promise of the defendant to remove the danger, to which he was being exposed by replacing the defective jack with one not defective, or the proposition insisted upon by plaintiff's counsel to the effect that the evidence did not raise the issue of assumed risk, but that the issue was one of contributory negligence. Will say, however, that the assumption of risk and contributory negligence are regarded and treated in this state as distinct defenses, and that we, without undertaking to decide the question, are inclined to the opinion that but for the promise on the part of the defendant to replace the defective jack involved in the present case with a new one, free from defects, the defense of assumed risk pleaded by defendant would, under the undisputed evidence, have to be sustained.

It is contended that the verdict is excessive. In this contention we do not concur. The evidence is sufficient to justify the jury's finding as to the amount of the damages sustained by plaintiff, and there is nothing in the record to indicate that in arriving at the amount awarded they were actuated by any improper motive. The instructions given the jury by the court to guide them in determining the issues submitted were full and as fair to the defendant as it was entitled to, and since, after a careful consideration of all of the assignments and contentions of the defendant, we are of the opinion that no material error is pointed out, the judgment will be affirmed.

Affirmed.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes