JOHNSON, APPELLANT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO., RESPONDENT.

(No. 5,521.)

(Submitted September 17, 1924. Decided October 20, 1924.)

[230 Pac. 52.]

*Personal Injuries—Railroads—Master and Servant—Defective Tools — Master's Promise to Repair — Continuance in Employment—Servant Relieved of Assumption of Risk—Rule Applicable to Use of Simple Tools—Directed Verdict—Error.*

Trial—Directed Verdict—When Proper, When not.

   1.   A cause should never be withdrawn from the jury unless the conclusion from the facts follows necessarily, as a matter of law, that a recovery cannot be had upon any view which can reasonably be drawn from the facts which the evidence tends to establish.

Same—Directed Verdict for Defendant—Evidence of Plaintiff—How Viewed on Appeal.

   2.   In reviewing an order directing a verdict for the defendant, the supreme court will consider only the evidence of the plaintiff, excluding a bare scintilla but including every fair inference which may be drawn from the facts proved, as well as any evidence introduced by defendant which tends to support the plaintiff's case, and if the evidence viewed in the most favorable light tends to establish the case made by plaintiff's pleadings, the order will be reversed.

Personal Injuries—Master and Servant—Defective Appliance—Directed Verdict for Defendant Held Error.

   3.   Evidence in an action by a section-hand for personal injuries sustained by reason of a defective pick which had become so dull that instead of breaking a rock it scattered particles thereof causing one of such particles to strike him in the eye, *held* sufficient to justify a jury in finding that the pick was not in a reasonably safe condition for use, and that therefore the court erred in ordering a directed verdict for defendant railway company.

Same—Proximate Cause may be Proved by Indirect Evidence.

   4.   The proximate cause of a personal injury may be proved by indirect evidence.

Same—Defective Appliance—Complaint to Master—Promise to Repair—Sufficiency.

   5.   A servant complaining of a defective appliance is not required to state in exact words that he apprehends danger to himself from

---

   3.   Liability of master for injury by defect in common tools, see note in 13 L. R. A. (n. s.) 668.

   5.   Rights of a servant who continues work on the faith of his master's promise to remove a specific cause of danger, see notes in 4 Ann. Cas. 153; 9 Ann. Cas. 1011; 17 Ann. Cas. 896; 62 L. R. A. 781.

[71 Mont. 390.]

its use, nor to formally notify his employer that he will leave his service unless the defect is remedied, it being sufficient if from the circumstances of the case it can be fairly inferred that he was complaining on his own account and that he was induced to continue in the service by reason of the promise to repair.

Same—What Insufficient to Show Nonreliance on Master's Promise to Repair.

6. The fact that plaintiff on cross-examination testified that if he had not been injured he would have continued his employment and the use of the defective appliance was not alone sufficient to show that he did not rely on the promise of his foreman that the defect would be remedied, since he had a reasonable time thereafter before he was required either to quit the service or assume the risk incident to the continued use of the appliance.

Same—Foreman—Vice-principal.

7. For the purpose of assuring an employee that a known defect in an appliance will be remedied, a foreman is the representative of the employer.

Same—Defective Appliance—Promise of Master to Repair—Nonassumption of Risk by Servant—Rule Applicable to Use of Simple Tools.

8. *Held,* that the rule that where the servant makes proper complaint that an appliance with which he is required to work is in a dangerously defective condition, and the master promises to repair the defect, the servant, in reliance upon that promise, may continue the employment and the use of the defective appliance for a reasonable time during which period he is relieved of the burden of assumption of risk, unless the danger is so imminent that a reasonably prudent person would not be justified in taking the chances of injury, is as applicable where the appliance is a simple one (such as a pick) as where it is complicated in nature.

Same—Reason for Rule Last Above Stated.

9. Where the servant, after making complaint of the defective condition of a tool with which he is required to work, agrees to continue the employment and the use of the tool in reliance upon the master's promise to make repairs, a new contract is created between the parties whereby the master impliedly agrees that the servant shall not be held to have assumed the risk incident to the use of the tool, in its then condition, for a reasonable time following his promise.

*Appeal from District Court, Mineral County; Theodore Lentz, Judge.*

ACTION by Sam Johnson against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant on directed verdict and plaintiff appeals. Reversed and remanded for new trial.

6. Servant's assumption of risk of defect in simple tool which master has promised to repair or replace, see notes in **Ann. Cas.** 1913C, 505; 27 **L. R. A.** (n. s.) 1052.

*Messrs. Frank & Gaines* and *Mr. M. S. Cohen*, for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

(NOTE: The authorities cited by appellant on the points involved are substantially all incorporated in the opinion, and it is therefore deemed unnecessary to insert them here.)

*Messrs. Murphy & Whitlock*, for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

Citing on the point that the promise to repair doctrine does not apply in the case of a simple tool, in addition to the cases adverted to in the opinion, the following: *Gulf & C. S. F. R. R. Co.* v. *Brentford,* 79 Tex. 619, 23 Am. St. Rep. 377, 15 S. W. 561; *Sterling Coal Co.* v. *Fork,* 141 Ky. 40, 40 L. R. A. (n. s.) 837, 131 S. W. 1030; *American Tobacco Co.* v. *Adams,* 137 Ky. 422, 125 S. W. 1067; *International Packing Co.* v. *Kretowicz,* 119 Ill. App. 488; *Huggard* v. *Glucose Sugar Refining Co.,* 132 Iowa, 724, 109 N. W. 475; *Coin* v. *Lounge Co.,* 222 Mo. 488, 17 Ann. Cas. 888, 25 L. R. A. (n. s.) 1179, 121 S. W. 1; *Taylor* v. *White* (Tex.), 212 S. W. 656.

If the court should hold that this is the kind of case in which the doctrine that a complaint followed by a promise to repair relieves the servant from the assumption of risk for a reasonable time applies, we next submit that plaintiff has not brought himself within that doctrine in this case for several reasons.

In the first place, as we understand the law, it is necessary in order to make this doctrine applicable that the complaint of the servant and the promise of the master be based upon the ground that the instrumentality is dangerous and that the complaint and promise are made in respect to the servant's safety. (4 Labatt on Master & Servant, sec. 1345.) The general rule seems to be that such a complaint and promise have no effect where no additional danger to the servant is contemplated. (*Tesmer* v. *Boehm,* 58 Ill. App. 600; *Interna-*

*tional G. & N. Ry. Co.* v. *Turner,* 3 Tex. Civ. 487, 23 S. W
146; *American Tobacco Co.* v. *Adams,* 137 Ky. 422, 125 S. W.
1067; *Althardt* v. *Coal Co.,* 155 Ill. App. 364; *Dunphrey* v.
*Farr & Bailey Mfg. Co.,* 83 N. J. L. 763, 45 L. R. A. (n. s.)
363, 85 Atl. 203, 86 Atl. 1103; *Gowen* v. *Parley,* 56 Fed. 973,
6 C. C. A. 190; *Nickas* v. *Hines,* 174 Wis. 387, 183 N. W. 151.)
The foregoing cases point out not only that the complaint and
the promise must refer to the danger but in the second place
that there must be a definite promise to make a repair which
induces the plaintiff to remain at work. (See, also, *Mc-
Cluskey* v. *Garfield & Protor Coal Co.,* 180 Mass. 115, 61 N. E.
804; *St. Louis & S. F. Ry. Co.* v. *Mealman,* 78 Kan. 496, 97
Pac. 381.)

Assuming there were a promise, we next submit that it is
perfectly clear in this case that the plaintiff did not rely upon
the same in remaining at work. (*Grandpre* v. *Chicago M. &
St. P. Ry. Co.,* 46 S. D. 32, 190 N. W. 323; *Taylor* v. *White,
supra; Coin* v. *Lounge Co., supra; Coulston* v. *Dover Lumber
Co.,* 28 Idaho, 390, 154 Pac. 636; *Jones* v. *Walker County Lum-
ber Co.* (Tex. Civ.), 162 S. W. 420; *Roy* v. *Hodge,* 174 N. H.
190, 66 Atl. 123; *Stonega Coke & Coal Co.* v. *Bush,* 176 Ky.
690, 197 S. W. 389; *Andrecsik* v. *New Jersey Tube Co.,* 73
N. J. 664, 4 L. R. A. (n. s.) 913, 63 Atl. 719.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

The plaintiff, an employee of the defendant railway com-
pany, was injured while in the discharge of his duties as sec-
tion-hand, and brought this action to recover damages. He
contends that he was required to work with a pick, the points
of which had become so worn and dull that the use of it
greatly increased the hazards of his employment; that about
September 1, 1922, he complained to the foreman in charge,
who promised to have it sharpened or to supply a sharpened
pick; that he relied upon the promise and continued to use the
defective tool; that on September 24, while engaged in an ef-

fort to split or chip off the top of an old tie in order that it might be replaced by a new one, the pick, because of its dull condition, failed to penetrate the wood but glanced off, striking a rock and dislodging particles of rock, some of which struck him in the face and eyes, causing the injury of which complaint is made. Upon the trial and at the conclusion of all the evidence the court directed a verdict for the defendant, and plaintiff appealed from the judgment dismissing his complaint. The correctness of the trial court's ruling sustaining defendant's motion and directing a verdict is the ultimate question before us.

Section 9364, Revised Codes, provides: "Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto." In the interpretation of that **[1, 2]** statute, this court has announced the following rules:

(1) Upon a motion for a directed verdict in favor of the defendant, the evidence introduced by the plaintiff will be considered in the light most favorable to him and as proving whatever it tends to prove.

(2) A cause should never be withdrawn from the jury, unless the conclusion from the facts follows necessarily, as a matter of law, that a recovery cannot be had upon any view which can be drawn reasonably from the facts which the evidence tends to establish.

(3) In reviewing an order directing a verdict for the defendant, this court will consider only the evidence introduced by the plaintiff, and if that evidence, when viewed in the most favorable light, tends to establish the case made by the plaintiff's pleadings, the order will be reversed. (*Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Lehane* v. *Butte Electric Ry. Co.,* 37 Mont. 564, 97 Pac. 1038; *Moran* v. *Ebey,* 39 Mont. 517, 104 Pac. 522; *Carroll* v. *King,* 59 Mont. 403, 196 Pac. 996; *Mitchell* v. *Northern Pac. Ry. Co.,* 63 Mont. 500, 208 Pac. 903; *Long* v. *Davis,* 68 Mont. 85, 217 Pac. 667.)

The term "plaintiff's evidence," as employed in the foregoing rules, excludes merely a bare scintilla, but includes every fair inference which may be drawn from the facts proved and, as well, any evidence introduced by the defendant which tends to support the plaintiff's case.

In considering the evidence before us, allowance must be made for the crude manner in which the witnesses expressed themselves. Plaintiff is an Albanian, his witness Miller is a Greek, and his witness Maros a foreigner also. As disclosed by the record, these witnesses had a very limited knowledge of the English language; but evidence is not to be weighed by the elegance of diction or the terseness of expression, but by its intrinsic worth.

The record discloses that the plaintiff went to work for the [3] defendant as a section-hand on the section at Drexel about the end of July, 1922; that Paulos was the section foreman; that, when the picks became dull from use, they were gathered up once a month and sent to the shops at Deer Lodge or Tacoma to be sharpened; that new or sharpened picks were delivered once a month by the supply car which came through about the 20th of every month; that, during the summer of 1922, there was a strike of blacksmiths at the shops and new or sharpened picks were not delivered from June until December; that, when plaintiff went to work, the supply car had already passed this section for the month of July; that he knew when the car passed through in August, but did not know that the car had passed in September before he was injured, although it had done so.

Counsel for defendant insist that the evidence is insufficient to carry the case to the jury. They argue, first, that it does not disclose that the pick was in a defective condition, or, stated differently, that it was not in a reasonably safe condition.

It is made to appear that a pick in a reasonably efficient condition has prongs which are from eight to ten inches long; that, at the time plaintiff went to work, all the picks in use

on this section were somewhat dull, the points being about as thick as the end of a man's little finger; that by constant use they became much duller, so that at the time of the injury the prongs were only six or seven inches in length and the points as thick as the end of a man's thumb.

Miller testified that when a dull pick strikes a rock it causes more particles of rock to fly than will a sharp pick; that a blow from a sharp pick will cause the point of the pick to penetrate a tie and it will not glance off.

Plaintiff testified that a sharp pick will not break a rock as much or cause particles of the rock struck to scatter as much as will a dull pick. He testified further: "It was dangerous to work with those picks, because dull picks will fly large dirt up and no stick in tie." And again: "While working before at Drexel, it breaks a rock and hits me on the legs."

We think this evidence, with other evidence of like character in the record, is sufficient, if not contradicted, to justify a jury in finding that the pick was not in a reasonably safe condition for use, and that the use of it increased the hazards of plaintiff's employment.

Again, it is contended that the evidence fails to disclose the [4] proximate cause of plaintiff's injury. It does appear that, at the time of his injury, plaintiff was in the discharge of his duties, removing old ties and replacing them with new ones; that he was using his pick, attempting to split or chip off the top of an old tie in order to remove it; that he struck three blows, the first two of which were ineffective for any purpose; that when he struck the third blow, the pick failed to penetrate the tie, but glanced off, passed through a thin covering of fine dirt and struck something, with the result that a hard substance flew up, striking the plaintiff in the eye and causing a severe injury. On cross-examination, plaintiff testified: "Don't know what hit me in the eye * * * something hard hit me in the eye."

Miller testified that immediately after the injury he examined the place where plaintiff's pick struck and discovered a

rock which had been hit by a pick, the blow dislodging particles of the rock. Maros, who was working with the plaintiff
at the time, testified: "Sam [plaintiff] started to chip off the
top, started chipping off tie two or three times and pick slip,
hit rock, and rock was thrown over and hit him in the eye;
I seen myself the rock, could tell it was hit. I see the mark
on rock after he hit it.   *   *   *   Some rock flew by me but
didn't hit me."

It is the rule in this jurisdiction, and elsewhere generally,
that the proximate cause of an injury may be proved by indirect evidence (*De Sandro* v. *Missoula L. & Ry. Co.*, 48 Mont.
226, 136 Pac. 711); indeed, more often than otherwise, it is
a matter of inference from the facts disclosed by the evidence.
Under almost identical circumstances, the supreme court of
Iowa held this evidence sufficient to make out a *prima facie*
case, and we agree with that conclusion. (*Swaim* v. *Chicago,
R. I. & P. Ry. Co.*, 187 Iowa, 466, 174 N. W. 384.)

Again it is insisted that the evidence fails to show a suffi
[5]   cient complaint, a sufficient promise to repair, or a reliance upon the promise, if one was made. Plaintiff testified:
"Complained to Paulos about it being dangerous to work with
that pick before and after I got hurt on the leg.   *   *   *   I
told the foreman we got to have some tools, because the tools is
kind of dangerous working like this. He say he ordered the
roadmaster to send some to us.   *   *   *   The foreman told
us to do the best we can.   *   *   *   He said this week or next
week some time the picks will come. The foreman told me
would have to wait for the supply car to get the picks. I
said, I told him that the picks were dangerous. Danger would
be somebody getting hurt because of the dull picks."

Paulos testified: "All the men said that the tools are not
suitable to work with.   *   *   *   Whenever the boys make
that complaint, I told them that I had ordered picks, and was
expecting them in the supply car.   *   *   *   In the month of
August I made a requisition for some sharp picks. Every
month I made that requisition."

In answer to the question, "What made you stay on and work with dangérous picks?" the plaintiff replied: "He told me there come some more·picks; I believed him, that is why I stayed. * * * Suppose Paulos had told me that we wouldn't get any new picks, I would quit."

In 4 Labatt on Master and Servant, section 1345, the rule established by the current of authority is stated as follows: "When complaining of defective instrumentalities of machinery, it is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that he will leave the service, unless the defects be repaired or remedied. It is sufficient, if from the circumstances of the case it can bé fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise." And in section 1343 the author says: "Any acts or expressions by which the servant gives the proper agent of the employer to understand that he is unwilling to continue in the employment unless the cause of danger is removed constitute a sufficient complaint, and any acts or expressions by which such agent gives the servant to understand that the cause of danger will be removed constitute a sufficient promise."

In *Hermanek* v. *Railway*, 186 Fed. 142, 108 C. C. A. 254, the court said: "The evidence discloses that the plaintiff, on one or two occasions before the injury in question, complained to Barry, the foreman, of the worn and defective condition of the bars in question, and that they were dangerous to use; Barry stating in response thereto that he would fix them or send them to Clinton to be fixed. Whether the evidence in this regard shows a specific promise upon the part of Barry to procure new or repaired bars, that plaintiff so understood Barry's promise, and relied upon the same, is not altogether clear; but the evidence in this respect is of such a character that it should have been submitted to the jury to say whether or not Barry's statements to plaintiff were intended by Barry, and under-

stood by plaintiff, to be a promise that new or repaired tools would be furnished, and whether plaintiff continued to work with the tools, relying upon such promise.''

In support of their contention that the promise, if made, **[6]** was not relied upon, counsel for defendant direct attention to the testimony of plaintiff given on cross-examination, to the effect that, if he had not been injured, he would have continued the employment and the use of the defective pick. But counsel would have us reverse the rule, and consider plaintiff's testimony in the light most unfavorable to him, and this we may not do. But even if we consider the evidence referred to, it does not follow that a jury would not be justified in finding that the promise of defendant was the inducing cause for plaintiff's continuing his work.

In *Missouri, K. & T. Ry. Co.* v. *Brown* (Tex. Civ. App.), 180 S. W. 1117, the court said: ''The fact that the jury found, upon testimony which seems to have warranted it, that the plaintiff intended to continue in the employment of the defendant, using the lifting jack, 'if he hadn't got his finger hurt,' does not, under all the facts and circumstances in evidence, require a holding that he did not rely upon the promise to furnish a new jack. The plaintiff had the right to wait a reasonable time for the fulfillment of the foreman's promise to provide for him and his associates a new jack, and his statements upon which the jury's finding here under consideration was based, and the finding itself, are subject to the interpretation that the plaintiff meant, and the jury found, that his intention was to continue in defendant's service until the new jack arrived, and not indefinitely, regardless of the defective condition of the jack that hurt him, and the failure of the foreman to provide the new one.''

Whether plaintiff did continue to work with the defective pick for an unreasonable time after the promise was given was a question for the jury to determine. (*Breen* v. *Iowa Cent. Ry. Co.,* 159 Iowa, 537, 141 N. W. 410.)

In *Diehl* v. *Swett-Davenport Lumber Co.*, 14 Cal. App. 495, 112 Pac. 561, the court said: "But when the promise is that the repair shall be made upon the happening of a certain event, the master assumes the risk until the event has happened and for a reasonable time thereafter."

In *Atchison, T. & S. F. R. Co.* v. *Lannigan*, 56 Kan. 109, 42 Pac. 343, the court said: "The employee has still a reasonable time after the employer is in default before he is required either to quit the service or assume the risk."

We are satisfied that these authorities state the rule correctly.

· Paulos was the foreman in charge of these men. He had **[7]** general supervision and direction of their work; kept their time; made requisitions for supplies, including new or sharp picks, upon printed forms furnished to him by the railway company. He had charge of the tools, which he kept in a toolhouse at night, and this toolhouse he kept locked and retained the key himself. In *Prezeau* v. *Davis*, 67 Mont. 523, 216 Pac. 773, this court said: "For the purpose of providing a safe place for an employee to work, or of assuring him that a known defect will be remedied, a foreman is the representative of the employer." (*Grant* v. *Nihill*, 64 Mont. 420, 210 Pac. 914; 4 Labatt on Master and Servant, sec. 1344, and the cases cited in the notes.)

We conclude that plaintiff's evidence, when viewed in the light most favorable to him, required a submission of this case to the jury, unless the character of the instrumentality with reference to which the promise was given, affects the result and compels a different conclusion.

It is conceded by counsel for plaintiff that the pick in question is a simple tool within the meaning of that term as it is employed in the law of master and servant, and it is over the application of the so-called simple tool doctrine that the particular controversy herein is waged.

The general principles of law which define the duty of the **[8]** master, and define and limit the doctrine of assumption

of risk, are well settled, and, for the purposes of this appeal, may be stated briefly as follows: It is the duty of the master to exercise ordinary care to provide the servant with reasonably safe tools and appliances, and to see that they are kept in a reasonably safe and suitable condition for use. If the servant, with knowledge that the appliance furnished for his use is in a dangerously defective condition and, with an appreciation of the danger which its continued use involves, voluntarily continues to use it, he assumes the risk. If the appliance furnished for the use of the servant is a simple tool, he assumes the risk of injury arising from the use of it. Upon the statement and application of these principles, counsel for the respective parties agree.

It is also a rule equally well settled that, if the servant discovers that the appliance furnished for his use is in a dangerously defective condition, and he makes proper complaint to the master, and the master promises to repair the defect, the servant, in reliance upon that promise, may continue the employment and the use of the defective appliance for a reasonable time during which period he is relieved of the burden of assumption of risk, unless the danger is of such imminent character that a reasonably prudent person would not be justified in taking the chances of injury. As we understand counsel, they agree upon the statement of this rule but fail to agree upon its proper application, and the fact that they fail to agree is not surprising when it is recalled that the courts of last resort are unable to agree upon the same question.

Counsel for defendant contend that the rule should be so limited in its application as to exclude from its benefits the servant who is injured through the use of a defective simple tool, and direct our attention to decided cases which lend support to their view. The leading one is *Marsh* v. *Chickering*, 101 N. Y. 396, 5 N. E. 56, decided in 1886. The case involved an injury arising from the use of a defective ladder, and the

New York court denied to the plaintiff the right to recover, upon the theory that the general rule stated above is not applicable to a case of injury arising from the use of a simple tool or appliance. Curiously enough the court, after thus limiting the application of the rule, proceeded to hold that the plaintiff had failed to prove that the ladder was defective. The court said: "The evidence would not justify a recovery, for the reason that the defendant [master] did not fail in furnishing a proper ladder for the use of the plaintiff."

The rule has its very foundation in the fact that the appliance with which the servant is required to work is in a defective condition, and, by reason thereof, the hazards of the employment are increased. If the appliance is not defective, there cannot be any room for the application of the rule or for a discussion of its limitations; hence it would seem to follow that, in so far as it limits the application of the rule, the decision of the New York court is *obiter dictum.* But even so, the case has been followed in other jurisdictions, and was followed by the supreme court of New York in *Baumwald* v. *Trenkman,* 88 N. Y. Supp. 182, decided in 1904.

*Corcoran* v. *Milwaukee Gaslight Co.,* 81 Wis. 191, 51 N. W. 328, likewise grew out of the use of a defective ladder. After referring to the general rule above, the court said: "The allegations here fail to bring the case within the rule stated. Besides, as indicated in *Marsh* v. *Chickering,* 101 N. Y. 396, the rule is hardly applicable to a case like the one at bar."

*Meador* v. *Lake Shore & M. S. Ry. Co.,* 138 Ind., 290, 46 Am. St. Rep. 384, 37 N. E. 721, also involved an injury arising from the use of a ladder. The court limited the rule so as to exclude the servant injured by the use of a simple tool, upon the authority of *Marsh* v. *Chickering,* and *Corcoran* v. *Milwaukee Gaslight Co.*

The case of *Webster Mfg. Co.* v. *Nisbett,* 205 Ill. 273, 68 N. E. 936, grew out of an injury caused by the use of a defective hammer. The court applied the same limitation to the rule, citing *Marsh* v. *Chickering* and *Meador* v. *Lake Shore &*

*M. S. Ry. Co.,* and the decision was followed in *Gunning System* v. *Lapointe,* 212 Ill. 274, 72 N. E. 393, and in *Kistner* v. *American Steel Foundries,* 233 Ill. 35, 84 N. E. 44.

*McGill* v. *Traction Co.,* 79 Ohio St. 203, 128 Am. St. Rep. 705, 19 L. R. A. (n. s.) 793, 86 N. E. 989, involved an injury arising from the use of a stepladder, and the court there followed *Marsh* v. *Chickering, Meador* v. *Lake Shore & M. S. Co.,* and *Gunning System* v. *Lapointe.*

In *Turkey Foot Lumber Co.* v. *Wilson,* 182 Ky. 42, 206 S. W. 14, the court referred to cases which had established the simple tool doctrine in that state, and said: "And, as here recognized and applied, it absolves the master from liability to the servant for injuries sustained in using such a simple tool, even though there has been a promise to repair or an assurance of safety." This was followed in *Cincinnati, N. O. & T. P. Ry. Co.* v. *Burton,* 184 Ky. 2, 211 S. W. 186.

The force of these decisions is impaired somewhat by the fact that the courts simply ignored the authorities holding the contrary view.

Counsel for defendant also cite *Musser-Sauntry L. L. & M. Co.* v. *Brown,* 126 Fed. 141, 61 C. C. A. 207, *Railway Co.* v. *Kelton,* 55 Ark. 483, 18 S. W. 933, *Rahm* v. *Railway,* 129 Mo. App. 679, 108 S. W. 570, and *Brewer* v. *Coal Co.,* 97 Tenn. 615, 37 S. W. 549; but these cases are not in point. In *Musser-Sauntry L. L. & M. Co.* v. *Brown,* the decision is placed squarely upon the ground that injury from using the defective appliance was so imminent that the servant was culpably negligent in continuing to use it, even after a promise by the master to repair; and the decision in *Railway Co.* v. *Kelton* is placed upon the same ground. In *Rahm* v. *Railway,* the injury which gave rise to the action was inflicted in Illinois, and the Missouri court merely applied the rule as it existed in Illinois. The decision in *Brewer* v. *Coal Co.* involved only a question of pleading. It was held that there was not any allegation that the servant relied upon the master's

promise, and it was not disclosed how long before the accident the promise was made.

We have searched these authorities for a reason for the limitation thus imposed upon the general rule, but have failed to find any satisfactory to us. In *Marsh* v. *Chickering,* it is said that the rule which relieves the servant from the assumption of risk after the master's promise to repair has been given "is one of a just and salutary character, designed for the benefit of employees engaged in work where machinery and materials are used, of which they can have but little knowledge, and not for those engaged in ordinary labor which only requires the use of implements with which they are entirely familiar." That language is referred to approvingly in *Meador* v. *Lake Shore & M. S. Ry. Co., Webster Mfg. Co.* v. *Nisbett* and *Corcoran* v. *Traction Co.,* above. If these courts mean what they say, then the application of the rule to the facts of any given case depends upon the extent of the servant's knowledge of and familiarity with his working tool, rather than upon the simplicity or complexity of the instrumentality itself. If the rule was intended only for the benefit of laborers using machinery and materials, of which *they have but little knowledge,* then it sets a premium upon ignorance and stupidity. It denies the right to recover, not only to the servant who uses simple tools, but as well to every skilled mechanic using the most intricate machinery, if he has the mental capacity and technical knowledge to understand his machine, know its defects and appreciate the danger of using it in its defective condition. If it applies only to the servant using machinery so complicated that even an expert machinist can acquire but little knowledge of it, then the rule is so restricted that it is useless when viewed from a practical standpoint.

In *Gunning System* v. *Lapointe,* the Illinois court said: "The cases where the rule of assumed risk is suspended, and the servant exempted from its application under a promise from the master to repair or cure the defect complained of, are those in which particular skill and experience are neces-

sary to know and appreciate the defect and the danger incident thereto, or where machinery and materials are used of which the servant can have little knowledge, and not those cases where the servant is engaged in ordinary labor or the tools used are only those of simple construction, with which the servant is as familiar and as fully understands as the master.'' This court also fails to suggest any reason why the expert mechanic, who knows the defects in the machinery with which he works, appreciates the danger of using it in its defective condition, in fact, is just as familiar with it as is the master, should be relieved of the assumption of risk by the master's promise to repair; but the same immunity should be denied to the servant who uses a simple tool with which he is no more familiar than is the expert with his machine.

A rule without reason would not commend itself to anyone, and there must be some rational theory underlying the rule which relieves the servant of the assumption of risk after the master has promised to repair.

Speaking generally, the risk is upon the master in the first [9] instance, by virtue of the contract of employment. The burden shifts to the servant when, with knowledge of the defective appliance and an appreciation of the danger, he voluntarily continues to use it, under the maxim *volenti non fit injuria.* The effect of the servant's complaint, then, must be this: ''I am unwilling to continue to use the defective tool, because, if I am injured by the use of it, I will be held to have assumed the risk, and I will quit the employment rather than take the chances of injury.'' If the master's promise is to be given any effect whatever, it must be held to be tantamount to saying to the servant: ''If you will continue the employment and the use of the defective tool for a reasonable time, I agree to relieve you of the burden of assumption of risk which otherwise would fall upon you.'' By continuing the employment in reliance upon that promise, the servant accepts the offer, and a new agreement is created.

In *Holmes* v. *Clarke,* 6 Hurl. & N. 349, the English court said: "It must be considered that the master takes upon himself the responsibility of any accident that may occur during that period." Referring to that case, Labatt (4 Labatt on Master and Servant, sec. 1348) says, that the effect of the master's promise "is to bring into existence a new stipulation which operates so as to cast upon the master temporarily the responsibility for the particular risk in question."

In *Eureka Co.* v. *Bass,* 81 Ala. 200, 8 South. 216, it is said: "The assurances of the employer that the danger shall be removed is an agreement by him that he will assume the risk incident to the danger for a reasonable time," and this is approved in *Greene* v. *Minneapolis & St. L. Ry. Co.,* 31 Minn. 248, 47 Am. Rep. 785, 17 N. W. 378.

In *St. Louis I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 555, 120 S. W. 146, it is said: "The effect of a promise to repair by the master, and of the continuance in his service by the servant, in reliance upon the promise, is to create a new stipulation whereby the master assumes the risks impendent during the time specified for the repairs to be made. Where no definite period is specified in which the given defects are to be remedied, the suspension of the master's right to avail himself of the defense of assumption of the risk by the servant continues for a reasonable time," and this is followed in *Clark Lumber Co.* v. *Johns,* 98 Ark. 211, 135 S. W. 892.

In *Swift & Co.* v. *O'Neill,* 187 Ill. 337, 58 N. E. 416, the court stated the general rule above and said: "The reason of this rule being, that by the promise of the master a new relation is created between him and the employee, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following his promise." To the same effect are *Morden Frog Works* v. *Fries,* 228 Ill. 246, 119 Am. St. Rep. 428, 81 N. E. 862, and *Scott* v. *Parlin & Orendorff Co.,* 245 Ill. 460, 92 N. E. 319.

It is the rule in New York that the promise of a master to repair, when made to induce the servant to continue to work,

constitutes a contract on the part of the master to assume the risk and relieve the servant therefrom. (*Rice* v. *Eureka Paper Co.*, 174 N. Y. 385, 95 Am. St. Rep. 585, 62 L. R. A. 611, 66 N. E. 979; *Altman* v. *Schwab Mfg. Co.*, 54 Misc. Rep. 243, 104 N. Y. Supp. 349; *Citrone* v. *O'Rourke etc. Co.*, 113 App. Div. 518, 99 N. Y. Supp. 241.)

In *Trotter* v. *Furniture Co.*, 101 Tenn. 257, 47 S. W. 425, it is said: "The assurance of the master that the defect shall be remedied is an agreement by him that he will assume the risk for a reasonable time." If this be the correct theory, and we think it is, then we cannot perceive any reason for saying that the master's agreement shall be binding upon him when made with the servant who is required to use a complicated instrumentality, but that the same agreement is not binding upon him when made with the servant who uses a simple tool. Just how the simplicity or complexity of the instrumentality can affect the validity of the agreement is beyond our comprehension.

But counsel for defendant insist that, since, in this state, the risk of injury arising from the use of a simple tool is one of the ordinary risks of the employment (*Miller* v. *Granite County Power Co.*, 66 Mont. 368, 213 Pac. 604), the promise of the master to repair a simple tool cannot have the effect of imposing liability upon him, since none existed before the promise was given, and in support of that contention quote from 4 Labatt on Master and Servant, section 1347, the following: "Before the master can be held liable as for a failure to perform a promise to remove a specific danger, it is necessary to show that the existing conditions were of such nature that their maintenance implied culpability." The authorities cited in support of the text, and the following paragraph of the same section, however, disclose that the language quoted means only that it must be shown that the appliance was actually defective, and, by reason thereof, the hazards of the employment were increased. The author continues: "The very effect of the doctrine of the promise to repair is to make the master

liable when he would not be liable otherwise because of the operation of the doctrine of assumption of risk.''

The situation of the servant using the simple tool and the one using the complicated machinery is precisely the same at the moment complaint is made and the promise to repair is given. In effect the servant using the simple tool says: ''I will not continue to use this defective appliance, for in case of injury I will be held to have assumed the risk; hence I will quit the employment rather than take the chances of injury.'' And the effect of the master's promise to repair must be: ''If you will continue the employment and the use of the defective tool for a reasonable time, I agree to relieve you of the burden of the assumption of risk which otherwise would fall upon you, by reason of the fact that the risk of injury from the use of a simple tool is one of the ordinary risks of your employment.''

Some of the leading cases which apply the rule to simple tools as well as to complicated ones, and refuse to recognize the limitation imposed by the New York court, are *Fischer* v. *Chicago, M. & St. P. Ry. Co.*, 154 Minn. 78, 191 N. W. 262; *Swaim* v. *Chicago, R. I. & P. Ry. Co.*, above; *Brouseau* v. *Kellogg, S. & S. Co.*, 158 Mich. 312, 27 L. R. A. (n. s.) 1052, 122 N. W. 620; *Barr* v. *Pen Carbon M. Co.*, 81 N. J. L. 712, 80 Atl. 930; *Hermanek* v. *Railway*, above; *Missouri, K. & T. Ry. Co.* v. *Puckett*, 62 Kan. 770, 64 Pac. 631; *Cudahy Packing Co.* v. *Skoumal*, 125 Fed. 470, 60 C. C. A. 306; *Shea* v. *Seattle Lumber Co.*, 47 Wash. 70, 91 Pac. 623.

In the following cases the rule was applied to injuries arising from the use of simple tools without considering the distinction sought to be made by the New York court: *Alkire* v. *Myers Lumber Co.*, 57 Wash. 300, 106 Pac. 915; *Notthoff* v. *Los Angeles, G. & E. Co.*, 161 Cal. 93, 118 Pac. 436; *Cincinnati, N. O. & T. P. Co.* v. *Robertson*, 139 Fed. 519, 71 C. C. A. 335; *Gold-Hunter M. & S. Co.* v. *Johnson*, 233 Fed. 857, 147 C. C. A. 523; *Ohio & Pittsburgh Milk Co.* v. *Fehl*, 187 Fed. 792, 109 C. C. A. 640; *Shue* v. *Central of Georgia Ry. Co.*, 6

Ga. App., 714, 65 S. E. 697; *Sapp* v. *Christie Bros.,* 79 Neb. 701, 705, 113 N. W. 189, 115 N. W. 319; *Dailey* v. *Swift & Co.,* 86 Vt. 189, 84 Atl. 603.

In *Spencer* v. *Worthington,* 44 App. Div. 496, 60 N. Y. Supp. 873, decided in 1899, the court, after referring to *Marsh* v. *Chickering,* and other New York cases, said: "The learned counsel for the respondent, from an elaborate analysis of the decided cases in this state, deduces the rule that, where only simple appliances are used, the servant assumes the risk of their character or condition, so far as they are known to him, notwithstanding any promise of the master; but, where machinery is used, the promise of the master to repair defects relieves the servant from assuming the risk. We do not see on what principle such a rule can well stand. There is a great difference between the use of a steam boiler and that of a stepladder. * * * But when, because the servant is an expert, or for any other reasons, his knowledge of the danger arising from the use of the boiler is just as great as an ordinary servant would possess in the use of a stepladder, we do not see on what ground any distinction can be drawn between the two cases."

In *Indianapolis Union Ry. Co.* v. *Ott,* 11 Ind. App. 564, 38 N. E. 842, 39 N. E. 529, decided six months after the *Meador Case,* a recovery by the servant for injuries sustained by the use of a defective lantern after the master's promise to repair it, was sustained.

In *Louisville Hotel Co.* v. *Kaltenbrun,* 26 Ky. Law Rep. 208, 80 S. W. 1163, there was involved a claim for damages arising from an injury occasioned by the use of a box, conceded to be a simple instrumentality, and the court was urged to adopt the limitation imposed by the New York court. In response to the contention that the servant should not be relieved of the burden of assumption of risk, even though he had complained and received the master's promise to repair, the court said: "To this we cannot agree. The difference between a simple instrument and a complicated one vanishes when the

servant fully understands that it is dangerous to further use it.''

The decision in *Marsh* v. *Chickering* is criticised by the author of the notes to *Brouseau* v. *Kellogg S. & S. Co.*, in 27 L. R. A. (n. s.) 1053, and is disapproved by Labatt (4 Labatt on Master and Servant, sec. 1355), who says: ''It is difficult to see any rational ground upon which the distinction thus indicated can be sustained * * * The conclusion arrived at by the New York court of appeals is possibly to be explained by the fact that its attention was not properly directed to the rationale of the effect ascribed to a promise, as being essentially a stipulation by the master to accept temporarily the responsibility for any accident that may occur. (See sec. 1348, subd. a, *ante.*) It seems not reasonable to suppose that, if due prominence had been given to this aspect of the relations of the parties, the learned judges who concurred in the decision in *Marsh* v. *Chickering* would have been more fully alive to the anomaly of the position to which that decision commits them.''

Under the doctrine announced by the New York court, the servant, whose employment requires the use of simple tools only, has no right to rely upon the master's promise to repair; hence, after he discovers that his working tools are defective, he has no other alternative but to continue work and bear the burden of assumption of risk or quit the employment, even though it is necessary for what Carlyle calls the ''altogether indispensable for daily bread.''

In our judgment there is not any reason for the limitation sought to be imposed upon the rule, and we decline to recognize it.

The judgment is reversed and the cause is remanded for trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN, GALEN and STARK concur.